## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| T.H. through his next friend T.B. and T.B., for themselves and those similarly situated;<br><br>       Plaintiffs,<br><br>v.<br><br>DeKalb County School District; R. Stephen Green, in his official capacity as DeKalb County School District Superintendent; Georgia Department of Education; Richard Woods, in his official capacity as State School Superintendent; DeKalb County Sheriff's Office; and Jeffrey L. Mann, in his official capacity as Sheriff of DeKalb County;<br><br>       Defendants. | Civil Action No.<br><br>**Complaint for Declaratory and Injunctive Relief**<br><br><br>**Class Action** |

## Preliminary Statement

1.      Plaintiff T.H. brings this action on behalf of himself and other similarly situated youth to remedy Defendants' systemic failure to provide disability-related education services to youth detained at the DeKalb County Jail ("Jail").

2.     Like all youth aged 17 through 21 with a qualifying disability,
T.H. is entitled by federal law to a free and appropriate public education
provided by the State. For detainees like T.H., education can be particularly
life changing. Studies have shown that detainees who participate in
educational programs are far more likely to find a job upon release and are
much less likely to be re-incarcerated. And providing education services for
youth with disabilities who may already be struggling in school can prevent
the youths' time in custody from further marginalizing them.

3.     Defendants, however, are shirking their federally mandated
obligation to identify, evaluate, plan, and provide education services to
students with disabilities detained at the Jail. Indeed, Defendants have failed
to create even the most rudimentary systems necessary to identify and
evaluate those who might need special education, provide them with timely
education planning, or ensure that adequate services are available. A
systemic solution is thus needed to immediately remedy Defendants' ongoing
denial of appropriate education to Plaintiff T.H. and those like him.

4.     Defendants perpetuate these failures in violation of Plaintiffs'
rights under the Individuals with Disabilities Education Act, 20 U.S.C.
§§ 1400 *et seq.* ("IDEA"); Title II of the Americans with Disabilities Act, 42

U.S.C. §§ 12131 *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and the regulations promulgated under each of these statutes.

5.      Plaintiffs thus seek declaratory and injunctive relief on behalf of themselves, a class, and a subclass of youth confined to the Jail to ensure that they have access to an education.

## Jurisdiction and Venue

6.      This action arises under United States civil rights laws, and thus this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction over Plaintiffs' IDEA claims under 20 U.S.C. § 1415.

7.      Venue is proper in the U.S. District Court for the Northern District of Georgia because Defendants reside in the Northern District of Georgia within the meaning of 28 U.S.C. § 1391 and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Georgia. The Atlanta Division of the District Court for the Northern District of Georgia provides the most convenient forum for the litigation of these issues.

## The Parties

### I.    Plaintiffs

#### A.   T.H.

8.      Plaintiff T.H. is 17 years old.

9.      He is a student with a qualifying disability under the ADA and Section 504 and a student entitled to special education under the IDEA, with a disability classification of "Other Health Impaired."

10.     By virtue of Defendants' failure to employ a system to identify, evaluate, plan, and provide services to eligible youth detained at the Jail, T.H. has been, and continues to be, denied a free and appropriate public education.

11.     T.H. has been diagnosed with schizophrenia and major depressive disorder with psychotic features.

12.     These conditions require that T.H. receive special education services, without which he cannot pursue an education.

13.     He received a Section 504 plan from the DeKalb County School District ("School District") in April 2017, which he brought with him to the DeKalb Alternative School the following school year (2017 – 2018).

14.     When T.H. began attending Stephenson High School in the fall of 2018, his mother made sure school officials knew that T.H. had a Section 504

1785430.1

plan and she sought to have that plan implemented. She also engaged in conversations with school officials about starting the special education evaluation process.

15.    The DeKalb Alternative School and Stephenson High School are both in the DeKalb County School District.

16.    T.H. was initially detained at the Jail on November 2, 2018 and released on November 21, 2018. At no point during this period did Defendants either identify T.H. as a youth potentially entitled to disability-related education services or evaluate him to determine whether or what special education services he might need. Nor did Defendants provide T.H. with special education services or services in accordance with his Section 504 Plan or in accordance with an Individualized Education Program (an "IEP").

17.    T.H. was detained at the Jail again on December 4, 2018 and has remained in detention since. Here too, Defendants failed to identify and evaluate T.H. and failed to provide him with disability-related education services when he first entered the Jail.

18.    In an effort to receive the education he is entitled to, T.H. filed a Due Process Hearing Request with the Georgia Office of State Administrative Hearings ("OSAH") on April 23, 2019 against the School District, the Georgia

Department of Education (the "Department"), and the Sheriff's Office. The administrative law judge in that case ruled that OSAH lacked jurisdiction to consider claims under the ADA and Section 504; claims against the Department; claims against the Sheriff's Office; and claims seeking systemic relief. T.H. thus has not and cannot receive full relief for his claims in the administrative process.

19.    T.H. also filed a grievance with the Jail, in accordance with the Jail's procedures, seeking the educational services he is entitled to. The time for the Sheriff's Office to respond has elapsed without a response.

**B.  T.B.**

20.    T.B. is the mother of T.H. She has advocated for education services to address T.H.'s disabilities. Her requests for services have included requests for accommodations pursuant to Section 504 and the ADA, and for evaluations pursuant to the IDEA.

**II.  Defendants**

21.    Plaintiff and other eligible youth detained at the Jail are entitled to a free and appropriate public education ("FAPE"), which consists of special education and related services, at no cost to the parents or the student, reasonably calculated to enable a child to make educational progress.

1785430.1

22.    Related services include, but are not limited to, supportive services necessary for the youth to benefit from special education.

23.    Defendants here—the School District, the Department, the Sheriff's Office, and their associated officials—share responsibility for ensuring that youth detained at the Jail receive the FAPE they are entitled to.

A.    **DeKalb County School District and Superintendent R. Stephen Green, in his official capacity**

24.    The DeKalb County School District is a Local Educational Agency as defined by 20 U.S.C. § 1401(19)(A).

25.    The School District recognizes its IDEA obligations in the Special Education section of its website. *Special Education Overview,* DeKalb County School District (last visited June 5, 2019) https://www.dekalbschoolsga.org/special-education/.

26.    The School District receives federal financial assistance under the IDEA and is a public entity under the ADA and Section 504.

27.    Under Georgia law, the School District is the primary provider of public education and special education and related services for DeKalb County. This responsibility includes having primary responsibility for providing special education and related services at the Jail.

28.    As the Department and the School District both explain in their special education implementation materials, when a student is detained in a jail managed by a sheriff's office, the district where the student is detained is responsible for providing services to the student, and the School District must "work closely with the local jail in order to gain access to the student and to deliver services."

29.    Defendant Green is and has been the Superintendent for all periods relevant to this complaint.

30.    As Superintendent, Defendant Green is responsible for the day-to-day administration of the School District.

31.    As Superintendent, Defendant Green must perform all duties assigned by law, which include ensuring that the School District provides education and disability-related education services in accordance with state and federal law.

32.    Defendant Green's administrative office is located in Stone Mountain, Georgia.

**B.    Georgia Department of Education and State School
Superintendent Richard Woods, in his official capacity**

33.    The Department is Georgia's State Educational Agency, as

defined by 20 U.S.C. § 1401(32). It receives federal financial assistance under

the IDEA and is a public entity under the ADA and Section 504.

34.    The Department is responsible for exercising general supervision

over all education programs for students with disabilities in Georgia,

including students at the Jail, and for ensuring that these educational

programs meet both state education standards and IDEA requirements.

35.    The Department must enforce all the rights that the IDEA

provides. This supervision includes the monitoring of agencies like the School

District and the Sheriff's Office, which are responsible for providing special

education and related services to Plaintiff T.H. and those similarly situated.

36.    Ultimately, the Department shares responsibility with the other

Defendants for ensuring that youth at the Jail actually receive a free and

appropriate public education.

37.    Defendant Woods is and has been the State School

Superintendent for all periods relevant to this complaint. Defendant Woods is

the administrative chief executive officer of the Department and the

executive officer of the State Board of Education.

1785430.1

38.     As State School Superintendent, Defendant Woods is responsible for the administration and enforcement of school laws, rules, regulations, policies, and standards, including the responsibility for ensuring that all of Georgia's school districts provide education and disability-related education services in accordance with state and federal law.

39.     Defendant Woods' administrative office is located in Atlanta, Georgia.

## C.     DeKalb County Sheriff's Office and Sheriff Jeffrey L. Mann, in his official capacity

40.     The Georgia Constitution requires that each county in the State have a sheriff. County Sheriffs are elected officials whose authority and responsibilities are exclusively controlled by Georgia's Constitution and state statute. The Sheriff is also the "official county jailor," which means that the Sheriff's Office is "responsible for the health, safety and welfare of individuals in custody in accordance with court-established guidelines, and for preventing inmate escapes from custody." The Sheriff's Office receives federal funding for its programs and is a public entity under the ADA and Section 504.

41.     The Sheriff's Office runs the Jail, which primarily houses pretrial detainees and is one of the largest such facilities in the country. The Jail is

1785430.1

capable of holding 3,732 detainees in its 940,000 square-foot facility. It is the single largest public building in the State of Georgia and the largest pretrial detention facility in the region. The Jail contains 183 single occupancy cells and 1,791 multiple occupancy cells housing male and female alleged offenders ages 17 and up, with minimum, medium, and maximum security levels. The Jail processes an average of 33,000 people each year, many of whom are youth aged 17 through 21 and are eligible for disability-related education services under the IDEA, ADA, and Section 504.

42.    Defendant Mann, as DeKalb County Sheriff, is in charge of the Sheriff's Office and is responsible for overseeing all of its operations, including its policies, practices, and procedures. Sheriff Mann is and has been the Sheriff for all periods relevant to this complaint. His headquarters are located in Decatur, Georgia.

43.    By placing these youth at the Jail and in control of the Sheriff and the Sheriff's Office, Georgia delegates authority and responsibility to the Sheriff and the Sheriff's Office to cooperate with the School District and the Department to provide the education services federal law requires.

1785430.1

11

44.    The Sheriff and the Sheriff's Office determine, among other things, detainees' housing assignments and the programs and activities in which detainees may engage while at the Jail.

45.    The Sheriff's Office is in direct control over a detained youth's access to special education and related services.

46.    The Sheriff's Office is a service provider and a Local Education Agency under 20 U.S.C. § 1401(19), as well as a public agency obligated to provide services that are necessary to ensure that eligible detained youth receive a FAPE.

47.    The Sheriff and the Sheriff's Office share responsibility with the other Defendants for ensuring that youth detained at the Jail receive legally mandated education and special education services.

48.    The Sheriff and the Sheriff's Office are required to cooperate with the other Defendants to ensure that these services and accommodations are actually delivered.

**Defendants' Failure to Provide Special Education to Detained Youth**

49.    Access to an education is fundamental to a youth's success.

50.    This understanding is deeply rooted in our nation's history and tradition and is evident from the fact that every state in the Union has

1785430.1

established a system of free public schools and requires youth to attend school. It is further embodied in numerous federal statutes including the IDEA, ADA, and Section 504. As the Supreme Court recognized half a century ago, "it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Brown v. Board of Education*, 347 U.S. 483, 493 (1954).

51.    For detained youth who are already at the margins, the effect of an education as a means to recast one's future and enhance one's opportunities is even more profound. When already disadvantaged youth are denied basic educational opportunities, they face severe limitations on their prospects of graduation from high school, meaningful employment, and the possibility for post-secondary education. Indeed, Georgians without high school diplomas are nearly twice as likely to live in poverty as Georgians with diplomas and they collectively earn a median income of only $19,172, almost $7,000 lower than the median income of high school graduates. Melissa Johnson Georgia Budget & Policy Institute, *Improved Adult Education Support Critical to Georgia's Bottom Line* 2-3 (Aug. 2015).

52.    Denying detained youth access to an education also harms Georgia as a whole. An education is critical for youth to be able to participate

1785430.1

in our democratic society and is the foundation of good citizenship. It instills cultural values, prepares youth for productive careers, and allows them to become full participants in our state.

53.    It is thus as unsurprising as it is tragic that denying educational opportunities to detained youth greatly increases the chances that they will reoffend. Studies show that when individuals participate in any kind of educational program while incarcerated, their chances of future re-incarceration drop by 43%. Individuals that participate in education programs are also 13% more likely to find employment after their release. And every dollar spent on correctional education is estimated to save more than $4 to $5 on re-incarceration costs. Lois M. Davis et al., RAND Corp., *Evaluating the Effectiveness of Correctional Education: A Meta-Analysis of Programs that Provide Education to Incarcerated Adults*, at xvi (2013); RAND Corp., *Education and Vocational Training in Prisons Reduces Recidivism, Improves Job Outlook* (Aug. 22, 2013), https://www.rand.org/news/press/2013/08/22.html.

54.    Defendants, however, deny youth detained at the Jail access to the disability-related education services that they need.

## I.    Defendants Fail to Locate and Evaluate Eligible Youth

55.    The IDEA requires that Defendants enact policies and procedures to identify, locate, and evaluate all youth with disabilities detained at the Jail who are in need of special education and related services.

56.    In addition to requiring that these policies and procedures be in place, the IDEA requires that Defendants actually implement these policies. These obligations exist regardless of whether youth were identified as needing special education before they were detained. And when a youth at the Jail is suspected of having a disability, the youth must be evaluated in a timely manner, regardless of whether he will be in the facility long enough to complete the evaluation.

57.    But Defendants have failed to create the basic systems necessary to meet these obligations.

58.    Neither the School District nor the Sheriff's Office has implemented any policies or practices to identify, locate, screen, or evaluate youth detained at the Jail to determine whether they need special education or related services. For example, when a youth is booked into the Jail, the School District and the Sheriff's Office have a practice of failing even to attempt to determine whether the youth has ever received special education

1785430.1

in the past, has an IEP, has ever had an IEP, or is suspected of being eligible for special education.

59.    The School District and the Sheriff's Office also fail to screen youth at the Jail to determine their eligibility for special education, obtain academic records from the youth's past schools, or refer youth for an evaluation to determine whether they may be eligible for special education when there is reason to believe that they may be. The Sheriff's Office is supposed to screen detainees for basic physical and mental health issues during intake—a process that is supposed to identify whether a detainee is literate.

60.    Despite this obligation, the Sheriff's Office makes no determination as to whether a youth may need special education services.

61.    Neither the School District nor the Sheriff's Office even maintains records of the youth who were eligible for or receiving special education or related services when they entered the Jail.

62.    To maintain the continuity of a student's special education and related services when he enters the Jail, the IDEA requires Defendants to have and implement policies and procedures to ensure that IEP and school records are transferred as expeditiously as possible. But Defendants have no

1785430.1

16

such policies and procedures. Instead, Defendants have a policy or practice of failing to request, obtain, and transfer IEPs and school records from other education programs.

63.    When a youth enters the Jail during the school year, the IDEA further requires Defendants to have and implement policies, procedures, and sufficient available resources to provide the student with special education and related services comparable to those described in the student's current IEP.

64.    Defendants have no such policies or procedures. The Sheriff's Office has no available special education or related services and the School District and the Department have a practice of generally not providing special education resources to detainees at the Jail. This is true even when a detainee's most recent, pre-detention IEP was developed or implemented by the School District itself.

65.    Defendants further fail to notify students and their parents that once students are detained at the Jail they will no longer receive special education or that they have a right to object and to a hearing.

66.    Thus, Defendants fail to identify detainees suspected of having a disability that would be entitled to an evaluation or that are entitled to

special education and related services under the IDEA. As a result, Defendants deny eligible youth detained at the Jail their right to a free and appropriate public education.

## II.    Defendants Fail to Provide Special Education and Related Services to Detained Youth

67.    Once a youth has been identified as needing special education and related services, federal law requires that Defendants, in conjunction with the youth, the youth's parents, and other stakeholders develop an IEP to provide the youth with services reasonably calculated to enable the youth to make educational progress. Further, because eligible youth detained at the Jail are in the physical custody of the Sheriff's Office, Defendants must work together to ensure that a system is in place to identify and evaluate special education needs, develop IEPs, and make resources available to implement them.

68.    Defendants are ultimately responsible for ensuring that each qualifying youth receives a free and appropriate public education.

69.    Students like Plaintiff T.H. and the putative class members are each 17 years old or older and are thus also entitled to receive transition planning and transition services to assist them in preparing for an independent, productive, civically engaged life after high school.

1785430.1

70.    Federal law also requires Defendants to implement specific procedural safeguards to protect students from being denied the services they are entitled to under the IDEA.

71.    But here too, Defendants lack the basic systems necessary to fulfill these obligations.

72.    Defendants lack policies, procedures, and practices for cooperating to develop IEPs for eligible youth detained at the Jail, and IEPs for those youth are generally not developed. Further, Defendants have not entered into any agreements between or among each other to ensure that all youth eligible for special education and related services receive IEPs or that every youth's IEP will be implemented. Defendants thus typically do not cooperate to develop IEPs or deliver special education and related services.

73.    Defendants also lack policies, procedures, and practices to ensure that adequate resources are available to meet the special education needs of eligible youth detained at the Jail and to ensure that youth are able to access those services. Defendants do not have agreements with service providers to ensure that these services are provided to all the eligible youth who need them.

74.    And Defendants lack a system for allocating space or time for youth to receive instruction. The Sheriff and the Sheriff's Office in particular lack the necessary protocol and policies relating to security, staffing, transportation, and housing that would ensure that eligible detainees at the Jail can participate in special education and related services.

75.    Nor do Defendants have policies, procedures, and practices to ensure that special education and related services are provided in the least restrictive setting appropriate for the youths who require them.

76.    Defendants have not established a traditional classroom environment to educate these students within the Jail. They also do not provide all eligible detainees with access to the general education curriculum and the supports, services, and accommodations needed in order to provide them with a FAPE.

77.    Defendants fail to provide a continuum of special education placements so that students detained at the Jail learn in the least restrictive environment that is appropriate to their needs. For instance, Defendants do not offer or provide self-contained, small-group special education classes, with whole-class lessons and instruction.

78.   Nor do Defendants provide students with access to appropriate instruction, class sizes, and teachers credentialed to serve their disabilities and needs such that they may learn with their disabled and non-disabled peers to the maximum extent possible.

79.   As a result of Defendants' foregoing systemic failures, youth detained at the Jail do not receive the special education and related services to which they are entitled.

III.   **Failure to Provide Reasonable Accommodations so Youth Can Access an Education**

80.   Section 504 and the ADA further protect the rights of detained youth entitled to special education. Section 504 and the ADA prohibit public entities, like Defendants, from discriminating against individuals or denying them access to or the benefits of the public entities' programs and services because of the individual's disabilities.

81.   Federal law thus requires Defendants to make reasonable modifications and accommodations to their programs and activities to ensure qualified youth detained at the Jail, like Plaintiff T.H., can participate in and fully benefit from the special education and related services that they are entitled to. But as detailed throughout this complaint, Defendants generally ignore this requirement.

82.    Further, as a direct result of Defendants' failure to meet their obligations under the ADA and Section 504, Plaintiff T.H. and those similarly situated have suffered and continue to suffer discrimination and lost education opportunity at the Jail and after they leave.

83.    These failures combined with Defendants' systematic disregard for the rights of IDEA-eligible detainees ensure that the hundreds of eligible youth with disabilities housed at the Jail each year are deprived of the opportunity to receive the special education, related services, and reasonable accommodations that they need to successfully prepare for adulthood (and required by federal law).

## Class Action Allegations

84.    This action is brought as a class action under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of the following classes:

a.    **IDEA Class.** The IDEA Class consists of each detained youth with a disability, as defined by the IDEA, who has or will be denied special education or related services that the youth is entitled to under the IDEA.

     b.   **Discrimination Subclass.** The Discrimination Subclass consists of each member of the IDEA Class who is a qualified individual with a disability, as defined by the ADA and Section 504, and who has or will be denied education-related services, programs, or activities that the youth is entitled to under the ADA or Section 504.

85.   **Common Questions – IDEA Class.** The IDEA Class raises numerous common questions that are central to the validity of the IDEA Class's claims and that can be answered for the entire class in one stroke. These questions include:

     a.   Whether Defendants have a policy or practice of ignoring their obligations under the IDEA;

     b.   Whether Defendants have a policy or practice of failing to identify youth at the Jail who are eligible to receive special education and related services under the IDEA;

     c.   Whether Defendants have a policy or practice of failing to evaluate IDEA-eligible youth to determine the special education and related services they need;

d.   Whether Defendants have a policy or practice of failing to provide IDEA-eligible youth detained at the Jail with special education and related services; and

e.   Whether Defendants' actions and inactions detailed in this paragraph violate federal law.

86.   **Common Questions – Discrimination Subclass.** The Discrimination Subclass also raises numerous common questions that are central to the validity of the Discrimination Subclass's claims and that can be answered for the entire class in one stroke. These questions include:

a.   Whether Defendants have a policy or practice of ignoring their obligations under the ADA;

b.   Whether Defendants have a policy or practice of ignoring their obligations under Section 504;

c.   Whether Defendants have a policy or practice of failing to make reasonable accommodations to their programs and activities to ensure Discrimination Subclass members can participate in and benefit from special education and related services;

d.   Whether Defendants have a policy or practice of actually failing to provide Discrimination Subclass members with the opportunity to effectively and meaningfully participate in and benefit from special education services;

e.   Whether Defendants have a policy or practice of denying Discrimination Subclass members equal access to special education;

f.   Whether Defendants' policies and practices cause Discrimination Subclass members to be unnecessarily segregated in their education; and

g.   Whether Defendants' actions and inactions detailed in this paragraph violate federal law.

87.   **Numerosity.** The number of youth in the IDEA Class is so numerous that joinder of them all is impracticable because the Class includes all current and future youth aged 17 through 21 who are detained at the Jail and who are eligible for services under the IDEA.

88.   The number of youth in the Discrimination Subclass is so numerous that joinder of them all is impracticable because the Subclass includes all current and future youth aged 17 through 21 who are detained at

the Jail and who are eligible for services under the IDEA, ADA, and Section 504.

89.     Moreover, the population of detainees at the Jail changes frequently as detainees' criminal cases are resolved and new individuals are detained, making joinder of all class and subclass members even more impracticable.

90.     **Typicality.** The claims of Plaintiff T.H. and his mother, Plaintiff T.B., are typical of the claims of class members. Plaintiff T.H. is a member of both the IDEA Class and the Discrimination Subclass. Defendants failed to identify him as a youth in need of disability-related education services when he arrived at the Jail. He has been denied a free and appropriate public education under the IDEA and reasonable accommodations to give him access to educational services under the ADA and Section 504. Plaintiff T.H., like the members of the IDEA Class and Discrimination Subclass, is entitled to an educational system at the Jail that corrects each of the policy and practice failures identified in this Complaint.

91.     **Adequacy of Representation.** Plaintiffs T.H. and T.B. will fairly and adequately protect the interests of the IDEA Class and the Discrimination Subclass. There are no conflicts of interest between T.H. and

1785430.1

T.B. on the one hand and the members of the Class and the Subclass they represent on the other. Plaintiffs' counsel know of no conflicts among the IDEA Class and Discrimination Subclass.

92.   Plaintiffs' counsel are:

    a.   Attorneys from the firm Bondurant, Mixson, & Elmore, a law firm in Atlanta;

    b.   Attorneys from Children's Rights, a non-profit advocacy organization with offices in New York and Atlanta; and

    c.   The director of the Barton Juvenile Defender Clinic at Emory University School of Law.

93.   These attorneys have extensive experience litigating complex class actions in federal court, including extensive experience in institutional reform litigation on behalf of system-involved youth. Plaintiffs' attorneys have committed sufficient resources to represent the Class and Subclass in this action. Plaintiffs' attorneys are thus well-suited to fairly and adequately represent the interests of the IDEA Class and Discrimination Subclass.

94.   And as detailed throughout this complaint, Defendants have acted or failed to act on grounds generally applicable to both classes.

1785430.1

27

**First Claim for Relief**
**(On behalf of the IDEA Class for Defendants' violations of the IDEA)**

95.     Plaintiffs incorporate all of the foregoing paragraphs by reference as if fully set out here.

96.     Plaintiff T.H. and members of the IDEA Class are all detained in the Jail, an adult correctional facility, and they are all youth with disabilities who are eligible for special education and related services under the IDEA.

97.     Through the acts and omissions alleged in this complaint, Defendants have denied and continue to deny Plaintiff T.H. and members of the IDEA Class of their right to a free and appropriate public education in the least restrictive environment under the IDEA and the regulations promulgated thereunder. 20 U.S.C. §§ 1400 *et seq.*; 34 C.F.R. §§ 300 *et seq.* In particular, Defendants have among other things failed to:

  a.    Ensure that all youth with disabilities detained at the Jail who are in need of special education and related services are identified, located, and evaluated;

  b.    Provide these students during their detention in the Jail with a free appropriate public education, 20 U.S.C. § 1400(d)(1)(A), in the least restrictive environment, 34 C.F.R. §§ 300.114-20;

c.   Hold meetings to review and revise these students' IEPs as required by 20 U.S.C. § 1414(d)(4) and 34 C.F.R. § 300.324;

d.   Provide these students with transition planning services that ensure "equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities," 20 U.S.C. § 1400(c)(l);

e.   Provide these students with "related services" that a child with a disability may need in order to benefit from their education, 20 U.S.C. § 1401(26)(A);

f.   Provide "services comparable" to their previous IEP for thirty days and then either adopt the prior IEP or develop, adopt, and implement a new IEP when these students with an IEP enter a new school district, 20 U.S.C. § 1414(d)(2)(C); 34 C.F.R. § 300.323(e); and

g.   Follow procedural safeguards to ensure the due process rights of these students, 20 U.S.C. §§ 1412(a)(6), 1415.

98.   The Department has further impeded Plaintiffs' and the IDEA Class's rights by failing to adequately oversee and monitor the delivery of special education and related services to these youth.

1785430.1

29

99.     As a direct result of Defendants' conduct, Plaintiff T.H. and the members of the IDEA Class are suffering ongoing irreparable harm and lost education opportunities and are therefore entitled to declaratory and injunctive relief.

## Second Claim for Relief
### (On behalf of the Discrimination Subclass for Defendants' violations of the ADA)

100.    Plaintiffs incorporate all of the foregoing paragraphs by reference as if fully set out here.

101.    Plaintiff T.H. and the members of the Discrimination Subclass are all "qualified individuals with disabilities" within the meaning of Title II of the ADA and entitled to special education under the IDEA. They all have impairments that substantially limit a major life activity and they are all incarcerated at the Jail.

102.    Plaintiff T.H. and the members of the Discrimination Subclass are all qualified—with or without reasonable modification—to participate in the special education programs, services, and activities that Defendants must provide at the Jail.

103.    The Defendant agencies have been and continue to be public entities within the meaning of Title II of the ADA.

1785430.1

30

104.   Defendants have violated the rights of Plaintiff T.H. and the Discrimination Subclass under the ADA and its implementing regulations as set out above.

105.   By failing to provide and ensure the provision of appropriate special education, related services, reasonable modifications, and accommodations to Plaintiff T.H. and the members of the Discrimination Subclass, Defendants have denied them the benefits of the education services and programs they are entitled to under federal and state law.

106.   As a direct result of Defendants' conduct, Plaintiff T.H. and the members of the Discrimination Subclass are suffering ongoing irreparable harm and lost education opportunities and are therefore entitled to declaratory and injunctive relief.

### Third Claim for Relief
### (On behalf of the Discrimination Subclass for Defendants' violations of Section 504)

107.   Plaintiffs incorporate all of the foregoing paragraphs by reference as if fully set out here.

108.   Plaintiff T.H. and the members of the Discrimination Subclass are all qualified individuals with disabilities within the meaning of Section 504 and are entitled to special education under the IDEA. They all have

1785430.1

impairments that substantially limit a major life activity and they are all detained at the Jail, and thus, are qualified—with or without reasonable modification—to participate in the special education programs, services, and activities that Defendants must provide at the Jail.

109.   The Defendant agencies have been and continue to be recipients of federal financial assistance within the meaning of Section 504.

110.   Defendants have violated the rights of Plaintiff T.H. and the Discrimination Subclass under Section 504 and its implementing regulations as set out above.

111.   By failing to provide and ensure the provision of appropriate special education, related services, reasonable modifications, and accommodations to Plaintiff T.H. and the members of the Discrimination Subclass, Defendants have denied them the benefits of the education services and programs they are entitled to under federal and state law.

112.   As a direct result of Defendants' conduct, Plaintiff T.H. and the members of the Discrimination Subclass are suffering ongoing irreparable harm and lost education opportunities and are therefore entitled to declaratory and injunctive relief.

**Prayer for Relief**

Therefore, Plaintiffs respectfully request that the Court grant the following relief:

a.  Certify this action as a class action under Federal Rules 23(a) and (b)(2);

b.  Declare that Defendants' ongoing conduct violates the IDEA, the ADA, Section 504, and the regulations promulgated under each of these statutes and thus relieve Plaintiffs' uncertainty as to their rights and Defendants' obligations;

c.  Issue a preliminary and/or permanent injunction to end Defendants' ongoing violation of the IDEA, the ADA, Section 504, and the regulations promulgated under each of these statutes;

d.  Order Defendants to develop and adopt a system to provide a free and appropriate public education consistent with the requirements of federal law to Plaintiff T.H. and the members of the IDEA Class and the Discrimination Subclass. Such a system must include policies and procedures to ensure the delivery of a free and appropriate education and it must include sufficient staffing and capacity to implement the system;

e.   Order Defendants to develop and adopt a system to identify, locate, and evaluate detainees that are eligible to receive special education who are detained at the Jail. Such a system must include policies and procedures to ensure that eligible youth are identified, located, and evaluated and it must include sufficient staffing and capacity to implement the system;

f.   Order Defendants to enter into an agreement or agreements ensuring that Defendants will work together to meet their obligation to provide special education and related services under the IDEA, ADA, Section 504, and the regulations promulgated under those statutes;

g.   Order Defendants to develop and adopt procedures that will allow youth detained at the Jail and their parents or guardians to adequately resolve differences concerning the special education and related services provided to the youth at the Jail;

h.   Order Defendants to develop and adopt the systems, processes, and mechanisms above in consultation with an expert in correctional education and special education who has been mutually agreed

upon by the parties and to bear all the reasonable fees and costs of that expert;

i.    Appoint an independent entity to oversee the implementation of the above-listed systems, processes, and mechanisms;

j.    Retain jurisdiction of this case until Defendants have complied with the orders of this Court and there is reasonable assurance that Defendants will continue to comply in the future;

k.    Award Plaintiffs attorneys' fees and costs, as provided by statute; and

l.    Grant any other relief as the Court finds just and proper.

DATED: July 18, 2019

Respectfully Submitted,

/s/ David G.H. Brackett
David G.H. Brackett
Georgia Bar No. 068353
Amanda Kay Seals
Georgia Bar No. 502720
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, Suite 3900
Atlanta, Georgia 30309
Phone: (404) 881-4100
Facsimile:  (404) 881-4111
brackett@bmelaw.com
seals@bmelaw.com

1785430.1

Christina Wilson Remlin
Georgia Bar No. 615630
CHILDREN'S RIGHTS, INC.
400 W. Peachtree Street, Suite 4-1086
Atlanta, GA 30308
Phone: (646) 831-3543
Facsimile: (212) 683-4015
cremlin@childrensrights.org

Randee Waldman
Georgia Bar No. 100107
BARTON JUVENILE DEFENDER CLINIC
EMORY UNIVERSITY SCHOOL OF LAW
1301 Clifton Road
Atlanta, GA 30322
Phone: (404) 727-6235
Facsimile: (404) 727-7851
rwaldm2@emory.edu

ATTORNEYS FOR PLAINTIFFS

1785430.1