IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

T.H.
as next friend
T.B., et al.,

     Plaintiffs,

       v.

DEKALB COUNTY SCHOOL
DISTRICT, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-3268-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Plaintiffs'
Motion for Class Certification [Doc. 132]. For the reasons set forth below, the
Plaintiffs' Motion for Class Certification [Doc. 132] is GRANTED.

## I.   Background

Named Plaintiffs T.H. and J.B. are students with cognitive and
behavioral impairments that they allege are qualifying disabilities under Title
II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*,
and Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, and
that entitle them to special education services under the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Am. Compl. ¶¶
8–31). Named Plaintiff T.B is T.H.'s mother. (*Id.* ¶ 20.) The Plaintiffs allege

that T.H and J.B. did not receive the special education services to which they were entitled during periods of incarceration at the DeKalb County Jail (the "Jail"). (*Id.* ¶¶ 8–31.) The Plaintiffs brought this suit seeking declaratory and injunctive relief, seeking "to compel Defendants to create a system to identify, evaluate, a provide a free appropriate public education ('FAPE') to qualifying youth with disabilities in the Jail." (Pls.' Br. in Supp. of Pls.' Mot. to Certify Class, at 1.) They seek this relief on their own behalf and on the behalf of the class and subclass they seek to certify through this motion:

> **IDEA Class**: All youth detained at the Dekalb County Jail with a disability, as defined by the IDEA.

> **Discrimination Subclass**: All members of the IDEA Class who are qualified individuals with a disability, as defined by the ADA or Section 504 of the Rehabilitation Act.

(*Id.* at 1–2.)

## II.   Legal Standards

To maintain a case as a class action, the named Plaintiffs must have standing, and the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

T:\ORDERS\19\T.H\CERTIFYTWT.DOCX

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Vega*, 564 F.3d at 1265. Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the Plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

The party seeking class certification "must affirmatively demonstrate" that the requirements of 23(a) and one of the requirements of 23(b) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The decision to grant or deny class certification lies within the sound discretion of the district court. *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir.1998) (en banc). In defining the scope of a district court's inquiry at the class certification stage, the Supreme Court has indicated that:

3

T:\ORDERS\19\T.H\CERTIFYTWT.DOCX

> Although . . . a court's class-certification analysis must be "rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Retirement & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 351) (internal citation omitted).

## III.   Discussion

In their Motion to Certify Class, the Plaintiffs present evidence that all of Rule 23(a)'s requirements and Rule 23(b)(2) are met. The Defendants did not file a response to the Plaintiffs' motion, and the Court deems the motion unopposed. *See* N.D. Ga. Local R. 7.1(B) ("Failure to file a response shall indicate that there is no opposition to the motion."). Because the Plaintiffs have satisfied the required elements without opposition from the Defendants, the Court grants the Plaintiffs' motion and certifies the Plaintiffs' proposed class and subclass.

### A. Standing

The Plaintiffs' standing was not challenged in an earlier motion to Dismiss or addressed in the Plaintiffs' Motion to Certify. However, because the Plaintiffs' standing is jurisdictional and required for class certification, this Court has an obligation to assess it. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). Here, the Plaintiffs have satisfied the

requirements for Article III standing—injury in fact, causation, and redressability. *Id.* The Plaintiffs allege that the Defendants have violated provisions of the IDEA and ADA by failing to ensure the provision of special education and related services. (Am. Compl. ¶¶ 108, 116.) The Plaintiffs and the putative class members are entitled to seek relief for violations of these statutes, and this relief would address the alleged violations. *See, e.g.*, 20 U.S.C. § 1403 (abrogating state immunity and providing for legal and equitable remedies for violations of the IDEA). Thus, the Plaintiffs have standing to bring these claims.

## B. Rule 23(a) Requirements

### 1. Numerosity

In the Eleventh Circuit, "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). When assessing the proposed class' numerosity and the impracticability of joinder, factors include "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). Because "[t]he Plaintiffs are required to prove, at the class certification stage, more than just a *prima facie* case," the Court must carefully evaluate any expert evidence

submitted. *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011). The Plaintiffs here argue that they have satisfied the numerosity requirement because their expert witness has identified a class and subclass of at least 81 eligible youth. (Pls.' Br. in Supp. of Pls.' Mot. to Certify Class, at 8.) Further, the Plaintiffs note that because the proposed classes include future detainees and individuals that "are constantly revolving in and out of custody, joinder of each putative class member as a plaintiff is virtually impossible." (*Id.* at 9.)

The Plaintiffs' expert, Professor Peter E. Leone, Ph.D., provides an estimate for the population of detained youths who would be eligible for special education services. (*Id.*, Ex. C-1, at 14–18.) In essence, Dr. Leone takes the population of detained youths and estimates that 40% of those individuals would require special education services. (*Id.*, Ex. C-1, at 14.) The 40% estimate is derived from statistics gathered from jails in New York and New Orleans. (*Id.*, Ex. C-1, at 15.) While the population of detained youths exceeded 500 throughout most of 2018 and 2019, that number dropped in June 2020 to 203, which means the estimated population of detained youth covered under the IDEA has ranged from roughly 200 in recent years to 81 in June 2020. (*Id.*, Ex. C-1, at 17.) Dr. Leone's report notes that this dramatic population decrease could be a result of COVID-19 mitigation efforts. (*Id.*, Ex. C-1, at 16 n.33.) The Plaintiffs argue that the IDEA Class and the Discrimination Subclass are of equal size because "[c]overage under the IDEA entitles a student to the

protections of the ADA and Section 504." (*Id.* at 9 n.32.)

In evaluating the admissibility of Dr. Leone's report, this Court will assess his qualifications, the reliability of his methods, and his testimony's relevance to the inquiry here. *See United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (describing how expert testimony is evaluated in the Eleventh Circuit). Dr. Leone has extensive experience in the context of special education for incarcerated youths, previously serving as the Director of the National Center on Education, Disability, and Juvenile Justice and as an expert and special master in similar litigation. (Pls.' Br. in Supp. of Pls.' Mot. to Certify Class, Ex. C-1, at 2–5.) Based on this extensive experience, Dr. Leone appears to be sufficiently qualified as an expert in this context. His testimony would assist the trier of fact, providing a sense of the number of incarcerated youths that require special education. Regarding the reliability of his methods, Dr. Leone's approach is very simple—he merely applies a fixed percentage to the total population to estimate the number of class members. (*Id.*, Ex. C-1, at 15.) This number is based off data from similar institutions, and Dr. Leone notes that the 40% figure is "conservative" given the number of incarcerated youths requiring special education in similar environments. (*Id.*, Ex. C-1, at 15 n.27.) Ultimately, the estimate presented by Dr. Leone is at least double the number the Eleventh Circuit has identified as sufficient to support a class, and this number is only likely to increase if the total population returns to pre-COVID

levels. Given this showing and the difficulty of joinder of future detainees, this Court finds Dr. Leone's report admissible for the purpose of evaluating the proposed class' numerosity. Thus, the Plaintiffs' proposed class and subclass are sufficiently numerous to support certification.

### 2. Commonality

In the Eleventh Circuit, the commonality requirement is a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Rule 23(a)(2) merely "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.* at 1355 (internal quotation marks removed). Here, the Plaintiffs identify several questions common to the classes. For the IDEA Class, the Plaintiffs highlight the questions whether the Defendants have failed to provide a system for identifying and evaluating eligible individuals and whether the Defendants have failed to ensure provision of FAPE to each eligible individual within the class. (Pls.' Br. in Supp. of Pls.' Mot. to Certify, at 11.) For the Discrimination Subclass, the Plaintiffs highlight whether the subclass members are receiving the benefits statutorily available to them. (*Id.* at 18.) This showing is sufficient to clear this low hurdle and indicates there is at least one issue common to most of the putative class members, and as such, the proposed class and subclass have sufficient commonality for certification.

### 3.  Typicality

Typicality exists where the "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1357 (internal quotation marks omitted). This typicality can exist despite substantial factual differences as long as the legal theories are very similar. *Id.* The Plaintiffs argue that the class representatives' claims are typical in that they possess qualifying disabilities, were denied FAPE and reasonable accommodations under the law, and "have been injured as a result of Defendants' failure to remedy the same harmful systemic defects." (Pls.' Br. in Supp. of Pls.' Mot. to Certify Class, at 21.) Regardless of the merits of the Plaintiffs' claims of systemic defects, the Named Plaintiffs and the class members will all be subject to the same system. *Cf. Vega*, 564 F.3d at 1276–77 (finding the typicality requirement unsatisfied where a class representative's contract differed from those of the putative class). Though the specific factual circumstances of each individual will differ, these legal theories and claims will be substantially similar, and as such, the Plaintiffs have demonstrated typicality sufficient for certification.

### 4.  Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In the Eleventh Circuit, the

"adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Any conflict must be "fundamental" to prevent certification. *Id.* (internal quotation marks omitted). The adequacy requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)" and "also factors in competency and conflicts of class counsel." *Amchem Prods., Inc.*, 521 U.S. at 626 n.20 (internal quotation marks omitted); *see also* Fed. R. Civ. P 23(g)(1) (describing the considerations courts must make in appointing class counsel).

The adequacy requirement's "merger" with the commonality and typicality requirements is clear, as the Court's analysis of those features uncovered no fundamental conflicts between the class representatives and class members such that "some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Valley Drug Co.*, 350 F.3d at 1189. The Named Plaintiffs argue that they "have a personal interest in vindicating the rights of all similarly situated youth who have been harmed due to Defendants' actions and inactions," and the Court has no evidence before it to suggest otherwise. (Pls.' Br. in Supp. of Pls.' Motion to Certify Class, at 22.) Therefore, it appears the Plaintiffs have satisfied both

T:\ORDERS\19\T.H\CERTIFYTWT.DOCX

prongs of the adequacy inquiry. Further, after review of their declarations, class counsel has satisfied all elements of Rule 23(g)(1) and (4). (*See, e.g.*, Pls.' Mot. to Certify Class, Exs. D, E, F.) As such, the adequacy requirement is met, and the Plaintiffs have satisfied all of Rule 23(a)'s requirements.

### C. Rule 23(b) Requirement

After satisfying all of Rule 23(a)'s requirements, the Plaintiffs argue that they have also satisfied Rule 23(b)(2)'s requirements, allowing for certification of their proposed class. Rule 23(b)(2) allows class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Eleventh Circuit has previously broken this Rule down into two inquiries, the first assessing the general applicability of a defendant's actions or inaction and the second assessing the appropriateness of the requested relief "with respect to the class as a whole." *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006). In this context, it appears the Defendants' policies or lack thereof are generally applicable to all incarcerated youth, and the requested relief would address any legal deficiencies of the policies. Because the Plaintiffs' claims here "rest[] on the same grounds and apply[] more or less equally to all members of the class" and "the forms of relief available . . . are in the nature of the group remedies that benefit the entire

11

class," the Plaintiffs have satisfied the requirements of Rule 23(b)(2). *Id.* at 1344–45 (internal quotation marks omitted). Therefore, the Plaintiffs have satisfied all requirements for certifying their proposed class and subclass.

## IV.    Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Class Certification [Doc. 132] is GRANTED. The Court certifies the following Class and Subclass:

**IDEA Class**: All youth detained at the Dekalb County Jail with a disability, as defined by the IDEA.

**Discrimination Subclass**: All members of the IDEA Class who are qualified individuals with a disability, as defined by the ADA or Section 504 of the Rehabilitation Act.

SO ORDERED, this 22 day of January, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\19\T.H\CERTIFYTWT.DOCX