IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

T.H.
as next friend
T.B., et al.,

　　　Plaintiffs,

　　　　　v.

DEKALB COUNTY SCHOOL
DISTRICT, et al.,

　　　Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-3268-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Plaintiffs'
Motion for Summary Judgment as to Liability [Doc. 159] and the Defendant
Sheriff Maddox's Motion for Summary Judgment [Doc. 201]. For the reasons
set forth below, the Plaintiffs' Motion for Summary Judgment as to Liability
[Doc. 159] is GRANTED in part and DENIED in part, and the Defendant
Sheriff Maddox's Motion for Summary Judgment [Doc. 201] is GRANTED in
part and DENIED in part.

## I.　　Background

Named Plaintiffs T.H. and J.B. are students with cognitive and
behavioral impairments that they allege are qualifying disabilities under Title
II of the Americans With Disabilities Act ("Title II"), 42 U.S.C. § 12131 *et seq.*,

and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, that entitle them to special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Am. Compl. ¶¶ 8–31). Named Plaintiff T.B. is T.H.'s mother. (*Id.* ¶ 20.) The Plaintiffs allege that T.H. and J.B. did not receive the special education services to which they were entitled during periods of incarceration at the DeKalb County Jail ("the Jail"). (*Id.* ¶¶ 8–31.) On behalf of themselves and a class of similarly situated detainees, the Plaintiffs brought this suit against several Defendants: the DeKalb County School District ("DCSD") and its Superintendent in his official capacity; the Georgia Department of Education ("GDOE") and the State School Superintendent in his official capacity; and DeKalb County Sheriff Melody Maddox in her official capacity. (*Id.* ¶¶ 35–59.)[1] The Plaintiffs allege that the Defendants "share responsibility for ensuring that youth detained at the Jail" receive the free and appropriate public education ("FAPE") required by law, and the Defendants fail to satisfy their obligations in this context. (*Id.* ¶¶ 32, 34, 65.) With regards to Sheriff Maddox, the Plaintiffs allege that the Sheriff has failed to coordinate with the other Defendants in identifying detainees who qualify for special education services and that she has failed to provide DCSD

---

[1] Sheriff Melody Maddox became DeKalb County Sheriff after the initiation of this action, and she has replaced the previous Sheriff in this action. Because these cross-motions only pertain to Sheriff Maddox, any reference to a singular Defendant should be read as referring to her.

with access to the Plaintiffs to provide the required FAPE. (*Id.* ¶¶ 69, 85.)

In its January 22, 2021 Order, the Court certified two classes in this action: the "IDEA Class," defined as "[a]ll youth detained at the Dekalb County Jail with a disability, as defined by the IDEA[;]" and the "Discrimination Subclass," defined as "[a]ll members of the IDEA Class who are qualified individuals with a disability, as defined by the ADA or Section 504 of the Rehabilitation Act." (Jan. 22, 2021 Order at 12.) The Plaintiffs now move for summary judgment as to Sheriff Maddox's liability, arguing that "the undisputed facts establish that the Sheriff fails to meet her IDEA obligations[,]" as well as her Title II and Section 504 obligations. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 2–3.) Sheriff Maddox has filed a cross motion for summary judgment, claiming that she has not failed to satisfy any applicable legal obligations under the IDEA, Title II, or Section 504. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 3.)

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment

must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal citations omitted).

## III. Discussion

As the Defendant notes, this case appears to present an issue of first impression in the Eleventh Circuit regarding a sheriff's obligations under the IDEA. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 2.) The Parties acknowledge that the IDEA has little to say about the specific responsibilities of a correctional facility in providing eligible detainees with the required FAPE. Therefore, this Court will first identify the Defendant's obligations under the IDEA and then assess whether the Defendant has satisfied them with regards to the Named Plaintiffs and their fellow class members. The Court will then evaluate the Plaintiffs' Title II and Section 504 claims. But first, the Court pauses to take stock of the undisputed facts upon which this decision rests.

### A. The Parties' Statements of Undisputed Material Facts

In support of their Cross-Motions for Summary Judgment, the Parties submitted Statements of Undisputed Material Facts, responded to the other side's Statements, and added facts of their own to their opponents' Statements. These documents show some areas of agreement. Sheriff Maddox is in charge of the DeKalb County Jail, the largest pretrial detention facility in the region. (Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶¶ 1, 3.) The Sheriff manages all of the Jail's operations, including determinations of which detainees can participate in certain programs and activities. (*Id.* ¶¶ 6–7.) "The Sheriff is ultimately responsible for facilitating access to [DCSD] to provide special education to students at the Jail." (*Id.* ¶ 8 (internal quotation marks omitted).) While DCSD is responsible for providing special education services at the Jail, any DCSD employee would rely upon the Sheriff and her staff at the Jail for access to the detainees. (*Id.* ¶¶ 64, 66.)

The undisputed facts also show that the Named Plaintiffs have not made significant progress in the IEPs; neither T.H. nor J.B. have "earned any credits toward a high school diploma from the instruction [they have] received at the Jail." (*Id.* ¶¶ 79, 84.) Both T.H. and J.B. spend less time with DCSD staff than required by their IEPs. For example, T.H.'s previous IEP, in effect both before and during the COVID-19 pandemic, "entitled him to receive 360 minutes of special education instruction at [the Jail], 5 times per week." (*Id.* ¶ 77.)

T:\ORDERS\19\T.H\MSJTWT.DOCX

However, T.H. was only scheduled to receive 180 minutes of instruction over four weekly sessions. (*Id.*) Once the COVID-19 pandemic began, DCSD ceased in-person education. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 11.) DCSD currently does not have access to eligible detainees. (*Id.* ¶ 18.)[2] Without access to the students, the Jail allows DCSD to provide the students with work packets, which the Jail then returns to DCSD. (*Id.* ¶ 12.) However, DCSD's provision of FAPE relies heavily on access to technology and the internet. (Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶¶ 72–73.) Before August 2020, DCSD was unable to provide detainees with access to the internet or technology. (*Id.* ¶ 71.) Since that time, DCSD has been able to provide shared-use laptops to

---

[2] The Plaintiffs dispute this fact on two grounds. First, the Plaintiffs argue that DCSD "is only unable to access eligible inmates at [the Jail] because the Sheriff's Office does not provide [DCSD] with access." (Pls.' Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 18.) However, this argument concedes the underlying fact— DCSD's inability to access the detainees—while arguing against the Defendant's proffered reasons for limiting access. Local Rule 56.1(B)(2)(A)(1) makes clear that responses to a movant's undisputed material facts must be nonargumentative. The Plaintiffs repeatedly dispute the Defendant's facts with legal arguments that do not contest the underlying facts. (*See, e.g.*, *id.* ¶¶ 7, 9, 12, 14.) Some of the Defendant's responses are similarly argumentative. (*See, e.g.*, Def.'s Response to Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 74.) In general, to the extent the responding party's disputes are only argumentative, the movant's facts will be admitted. Here, the Plaintiffs also argue that the Defendant's statement that student access is limited *because* of the pandemic is inadmissible hearsay. (*Id.* ¶ 18.) The Court will only admit this fact to show that DCSD currently has no access to eligible students at the Jail.

6

students at the Jail. (*Id.* ¶ 102.) T.H. and J.B. received school emails and a shared laptop on October 12, 2020, though there is some dispute as to how long the Plaintiffs possessed these resources. (Pls.' Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 14.)

One of the main areas of dispute between the Parties involve actions the Defendant undertook after the Plaintiffs filed their Motion for Summary Judgment in January of 2021. In response to the Plaintiffs' repeated assertions that the Sheriff's Office has no policies or procedures to identify detainees eligible for special education services, the Sheriff notes that since "early February 2021, the Sheriff's Office began providing weekly reports of inmates ages 17–21 to [DCSD]." (*See, e.g.*, Def.'s Response to Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 21.) The Sheriff claims that DCSD uses these reports to identify students eligible for special education services while in the Sheriff's custody. (*Id.*) The Defendant has attempted to admit the existence of these reports as an undisputed material fact in support of her Motion for Summary Judgment. (Def.'s Statement of Undisputed Material Facts in Supp of Def.'s Mot. for Summ. J. ¶ 19.) The Plaintiffs object to the admissibility of this fact for two reasons. First, the Plaintiffs argue this fact contradicts the Sheriff's prior admission that the Sheriff's Office makes no efforts to identify potential special education students at the Jail. (Pls.' Response to Def.'s Statement of Undisputed Material

7

Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 19.) The Plaintiffs argue that absent the previous admission's withdrawal, Federal Rule of Civil Procedure 36(b) deems this issue settled. (*Id.*) Second, the Plaintiffs argue this claimed fact is untimely and prejudicial under Federal Rule of Civil Procedure 37(c)(1), as the Defendant did not disclose this fact until she filed her cross-motion in May 2021. (*Id.*)

The Plaintiffs' first set of interrogatories asked Sheriff Maddox to "[s]tate whether You contend that You provide the School District with access to Your inmate database on at least a weekly basis for the purpose of effectuating child find obligations . . . ." (Def.'s Response to Pls.' First Set of Interrogatories ¶ 6.) Sheriff Maddox answered in the negative, noting that a draft Memorandum of Understanding regarding these efforts "was circulated, but never finalized." (*Id.*) Sheriff Maddox provided this answer in May 2020, nine months before she began to submit these reports. (*Id.* at 7.) These two statements are in direct conflict, and as a result, the Defendant failed to timely supplement or correct her interrogatory response in accordance with Federal Rule of Civil Procedure 26(e)(1). As a result, Federal Rule of Civil Procedure 37(c)(1) precludes the Defendant from using this information in her Motion for Summary Judgment, and the Court will not consider this fact in its analysis here. To the extent the Defendant denies the Plaintiffs' claimed undisputed facts solely due to this new weekly report, the Plaintiffs' facts will be deemed

admitted.[3]

### B. The Plaintiffs' IDEA Claim

Congress passed the IDEA with the purpose of ensuring "that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The Eleventh Circuit recently detailed the scope and structure of the law:

> The IDEA represents an ambitious national undertaking to promote the education of children with disabilities. Congress enacted the IDEA in light of its observation that most disabled children were either totally excluded from schools or were sitting idly in regular classrooms awaiting the time when they were old enough to drop out. The Act offers the States federal funds in exchange for a commitment to provide all children with disabilities individually tailored special education, also known as a free appropriate public education or FAPE. The principal vehicle for providing a FAPE is an individualized education program ("IEP") prepared by the child's parents, teachers, and school officials that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

---

[3] The Defendant argues that this case is moot because she "has taken steps to comply with the IDEA and [Title II and Section 504], and there exists no current case or controversy." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 12.) While a defendant's voluntary conduct can moot a case, this standard is "stringent"—it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Though the Defendant here claims her mere efforts to comply moot the case, she has not shown that these efforts alone have either (1) ended the alleged wrongful behavior or (2) would not recur. As a result, regardless of whether the Court considers these alleged weekly reports in its analysis, the Defendant's mootness argument fails.

*Durbrow v. Cobb Cty. School Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018) (internal quotation marks and citations omitted). "[B]eyond mere procedures, the IDEA confers a substantive right to a 'free appropriate public education' for children with disabilities." *L.J. by N.N.J. v. School Bd. of Broward Cty.*, 927 F.3d 1203, 1210 (11th Cir. 2019). In addition to the obligation to provide FAPE in accordance with a student's IEP, states receiving IDEA funds have a "child-find" obligation: states must develop a "practical method" to identify, locate, and evaluate students eligible for special education services. 20 U.S.C. § 1412(a)(3)(A); *see also Durbrow*, 887 F.3d at 1196 (noting the state's FAPE and child find obligations). "The child-find duty requires an evaluation of any child who is 'suspected of being a child with a disability,' and when the state overlooks clear signs of disability or negligently fails to order testing, it violates its duty under the Act." *J.N. v. Jefferson Cty. Bd. of Educ.*, No. 19-14847, 2021 WL 4128941, at *2 (11th Cir. Sept. 10, 2021) (quoting 34 C.F.R. § 300.111(c)(1)).

Federal regulations implementing the IDEA apply to state and local education agencies, as well as "[s]tate and local juvenile and adult correctional facilities[.]" 34 C.F.R. § 300.2(b)(1). The statute itself contemplates the provision of FAPE to incarcerated children with disability. 20 U.S.C. § 1412(a)(11)(C). However, the statutory and regulatory schemes give states broad discretion in structuring and implementing programs across its agencies

10

to ensure the provision of FAPE. *See Los Angeles Unified School Dist. v. Garcia*, 669 F.3d 956, 959–60 (9th Cir. 2012) ("[Q]uestions of which agency is responsible for providing a student with a FAPE are determined under state law."). While the statute and accompanying regulations oblige the state and its political subdivisions to identify eligible students and provide FAPE, the systems and processes for achieving those goals are left entirely to the individual states. Thus, while the state and its political subdivisions are collectively responsible for IDEA compliance, the scope of each subdivision's specific responsibilities depends upon state law.

### 1. The Sheriff's IDEA Obligations

As the Sheriff notes, the substantive law outlining her responsibilities with regards to the IDEA is very limited. The IDEA is an education statute, so it follows that many of the provisions apply specifically to state and local education agencies. For example, the federal regulations implementing the IDEA make clear that the state education agency is responsible for ensuring compliance with the law. 34 C.F.R. § 300.149(a). However, much of the statutory language applies to the State in general rather than specific agencies or subdivisions. *See, e.g.*, 20 U.S.C. § 1412(a). As noted above, the statute provides for much discretion among state authorities in the management and supervision of IDEA implementation. Without clear obligations specific to sheriffs, the Plaintiffs rely on the IDEA obligations generally applicable to

T:\ORDERS\19\T.H\MSJTWT.DOCX

states and case law outside of the correctional context to highlight the Sheriff's alleged liability for IDEA violations. (*See, e.g.*, *id.* at 17–20.) The Plaintiffs' arguments outline "systemic violations" of the IDEA and fault the Defendant for her role in those violations. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 16 (internal quotation marks omitted)).

The threshold question becomes whether the Defendant can be held liable for these systemic violations. The Defendant acknowledges that the federal regulations implementing the IDEA apply equally to her and all other "political subdivisions of the [S]tate." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 14 (quoting 34 C.F.R. § 300.2(b)(1)).) However, the Defendant argues that "where the IDEA and state law provide no specified responsibilities for a Sheriff," and considering certain logistical challenges inherent in operating a correctional facility, "it stands to reason that a Sheriff who is making documented efforts to" comply with the law cannot be found liable for violations. (*Id.* at 15–16.) However, the explicit inclusion of "[s]tate and local juvenile and adult correctional facilities" in the federal regulations indicates that these facilities are included in the regulations' definition of "the State," and all regulations are thus binding upon the Jail. 34 C.F.R. § 300.2(b). Rather than insulate the Sheriff from liability, the lack of specific obligations renders each political subdivision liable for the State's failures to comply with the IDEA.

This result is further confirmed by the unique position held by the Sheriff. As noted above, the Sheriff controls the access to the detainees, and DCSD requires access to instruct the students. Thus, without the Sheriff's cooperation, DCSD cannot provide the detainees with their FAPE. The Sheriff acknowledges that her role in IDEA compliance "is one of providing access for Eligible Inmates to receive education from DCSD." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 14.) Because the Sheriff is solely responsible for managing DCSD's access to students, any IDEA violation resulting from DCSD's lack of access renders both DCSD and the Sheriff liable. The Sheriff also maintains sole possession of the identities of the eligible detainees who enter the Jail. (*See* Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 29.) There is no dispute that "[w]ithout a formal system for child find in the Jail, [DCSD's] ability to expediently and thoroughly carry out its child find duty is inhibited." (*Id.* ¶ 32.) As a result, the Sheriff occupies a crucial position in ensuring the State can meet its child-find requirements. Insofar as DCSD's access is inadequate to comply with student's IEPs and the State fails in its child-find obligations among detainees at the Jail, the Sheriff is liable for these IDEA violations.

In summary, because of the unequivocal inclusion of correctional facilities in the IDEA's implementing regulations and the unique position the Sheriff holds with regards to the Plaintiffs' education, the Sheriff can be held

T:\ORDERS\19\T.H\MSJTWT.DOCX

liable for IDEA violations experienced by the Plaintiffs while detained at the Jail.

### 2.  The Sheriff Violates Her IDEA Obligations

The undisputed facts demonstrate IDEA violations with regards to the Named Plaintiffs and their fellow class members. First, the Sheriff violates her child-find duty. Under the IDEA, "[a]ll children with disabilities residing in the State" must be identified and evaluated through a practical method. 20 U.S.C. § 1412(a)(3); *see also* 34 C.F.R. § 300.111(c)(1). A state violates its child-find duty when it "overlooks clear signs of disability or negligently fails to order testing." *J.N.*, 2021 WL 4128941, at *2. By definition, the IDEA Class is composed of detainees in the Jail with a qualifying disability. Under the IDEA, the State must identify and evaluate these detainees to assess what, if any, special education services they might require. The undisputed facts show that no practical method exists for identifying detainees with disabilities under the IDEA. The Jail lacks a "formal intake process" to assist with the identification and evaluation of potentially eligible detainees, and DCSD does not have access to the identities of these potentially eligible detainees. (Def.'s Response to Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶¶ 28–30.) Further, the Parties agree that without such a formal process, DCSD's ability to identify and evaluate qualifying detainees is "seriously challenged" and "inhibited." (*Id.* ¶¶ 30, 32.) Because no practical

method for this identification and evaluation exists, eligible detainees go without the special education services guaranteed to them under the IDEA. As a result, the Sheriff violates her child-find duty with regards to the IDEA Class.

The experiences of Named Plaintiffs T.H. and J.B. illustrate the failure of the Jail's child-find processes. For example, despite the fact that J.B. had an existing IEP with DCSD, he was not identified or evaluated for special education services when detained at the Jail in either 2017 or 2018. (*Id.* ¶¶ 43–45.) And though T.H. has a qualifying disability, he was neither identified as a student with a qualifying disability nor evaluated upon his detention in December 2018. (*Id.* ¶ 36.) Long after this failure to identify and evaluate them, T.H. and J.B. began receiving special education services in 2019. (*Id.* ¶¶ 42, 50.) Thus, the undisputed facts show that the State failed its child-find duties with regards to both the Named Plaintiffs and the IDEA Class. Because they were detained in the Jail at this time, the Sheriff shares in the State's liability for these child-find violations.

In addition, to the extent eligible detainees have an existing IEP, the undisputed facts indicate an IDEA violation with regards to DCSD's access to those students. As the Eleventh Circuit has noted, failure "to implement substantial or significant provisions of the child's IEP" results in an IDEA violation. *L.J.*, 927 F.3d at 1213. The undisputed facts show that the "current

15

level of access provided by the Jail does not allow students to be served at the frequency and duration that is determined to be needed and provided for in their IEPs." (Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 74.) Again, T.H. and J.B.'s experiences illustrate the Jail's IDEA violation here. T.H.'s past IEP, which was in effect between August 2019 and August 2020, required 360 minutes of weekly instruction over five sessions from a special education teacher. (*Id.* ¶ 77.) However, during this time, T.H. was only scheduled for 180 minutes of instruction over four sessions. (*Id.*) During his detention, "T.H. has not earned any credits toward a high school diploma . . . ." (*Id.* ¶ 79.) Though a mere failure to progress is not sufficient on its own to prove an IDEA violation, only scheduling a student for half of the instruction required by his IEP and the student subsequently failing to earn a single credit toward graduation represents a failure "to implement substantial or significant provisions of the child's IEP[.]" *L.J.*, 927 F.3d at 1213–14. Because the Sheriff is "ultimately responsible for facilitating access to [DCSD] to provide special education to students at the Jail[,]" any failure to implement a student's IEP as a result of a lack of access necessarily implicates the Sheriff. (Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 8 (internal quotation marks omitted).)

The Defendant highlights a variety of logistical and operational challenges that, in her view, "must be taken into account when assessing the

good faith efforts of Sheriff Maddox and her jail staff" in facilitating "DCSD's provision of educational services." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 10.) First, the Sheriff claims that she is "194 detention officers short in jail operation." (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 4.) Second, the Sheriff highlights the effect the pandemic has had on the delivery of educational services and the need to limit interaction between staff and detainees. (*Id.* at 5.) In addition, the Sheriff repeatedly notes her priorities of maintaining order and security within the Jail and the transient nature of some detainees. (*See, e.g.*, Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 18–19.) The Court acknowledges the difficulty in managing a large pretrial detention facility, particularly in the middle of a global pandemic. However, these challenges do not alleviate the State's requirements to identify eligible students and provide FAPE in accordance with a student's IEP. While her precise role in the State's IDEA compliance must be determined by the State, her role is indisputably necessary as to eligible detainees at the Jail. The Plaintiffs' Motion for Summary Judgment as to Liability is granted, and the Defendant's Motion for Summary Judgment is denied as to the Plaintiffs' IDEA claims.

### C.  The Plaintiffs' Title II and Section 504 Claims

"Title II of the ADA and § 504 of the Rehabilitation Act forbid discrimination on the basis of disability in the provision of publics services."

T:\ORDERS\19\T.H\MSJTWT.DOCX

*J.S., III by and through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 contains similar language: "No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Because the same standards govern claims under these statutes, the Plaintiffs' claims here will be discussed together. *J.S., III*, 877 F.3d at 985. To prevail under Title II or Section 504, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). While the Supreme Court has noted that some conduct could violate the IDEA, Title II, and Section 504 simultaneously, a mere failure to provide FAPE does not alone demonstrate discrimination in the education context. *See J.S., III*, 877 F.3d at 985–86 (citing *Fry v. Napoleon*

18

*Cmty. Schools*, 137 S. Ct. 743, 756 (2017)). Under Title II and Section 504, "a plaintiff may establish intentional discrimination by showing deliberate indifference." *Id.* at 987. However, deliberate indifference "is an exacting standard." *Doe v. School Bd. of Broward Cty.*, 604 F.3d 1248, 1259 (11th Cir. 2010). Deliberate indifference will only be found where the response to the known circumstance is clearly unreasonable, and courts may determine that a response was not clearly unreasonable on a motion for summary judgment. *J.S., III*, 877 F.3d at 987.

The Plaintiffs argue that the Discrimination Subclass is entitled to judgment as a matter of law because the Sheriff intentionally discriminates against subclass members by demonstrating deliberate indifference to their IDEA rights. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 21–22.) The Plaintiffs argue that the Sheriff is aware of the Subclass members' rights to special education services and that she has the authority to assist Subclass members in receiving such services. (*Id.* at 22–23.) Despite this knowledge and authority, the Plaintiffs argue that the Sheriff's response to these circumstances is clearly unreasonable and thus constitutes intentional discrimination by deliberate indifference. (*Id.* at 24–25.) In her Motion for Summary Judgment, the Sheriff argues that the Plaintiffs cannot show that she "or her staff discriminated against anyone because of known disabilities." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 22.) Further, the Defendant

claims that the Plaintiffs are unable to show that her actions were clearly unreasonable under the circumstances. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 7.)

The Plaintiffs frame the Sheriff's IDEA failures as a response to this litigation, arguing that the Sheriff has the capabilities to cooperate with DCSD in complying with the IDEA but ceased her efforts after the initiation of this suit. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 23–24.) This claim fails for two reasons. First, the Plaintiffs do not allege more than a failure to provide FAPE. While the Sheriff's actions implicate the IDEA, it is unlikely that those same actions violate Title II and the ADA. The Supreme Court has discussed the interaction of these three statutes at-length in another IDEA case:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756. Acknowledging that in this context the relevant "school"

20

is the Jail, the answer to both hypothetical questions here is "no"—the Plaintiffs could not have brought this claim against a non-educational public facility and no adult could make the same claim against the Sheriff. As a result, the *Fry* hypothetical here indicates that the allegations here merely address a denial of FAPE. Because a viable Title II or Section 504 claim requires something more than mere denial of FAPE, the Plaintiffs' claims fail as a matter of law.

Second, the Sheriff's response to the known circumstances was not clearly unreasonable. Though the logistical challenges facing the Sheriff in managing a large pretrial facility do not absolve her of her IDEA obligations, they do weigh against a finding of deliberate indifference in the Title II and Section 504 context. These claimed challenges—maintaining order among detainees, managing staffing shortages, and protecting staff and inmates from COVID-19—all provide a reasonable basis for the Sheriff's actions, regardless of their IDEA implications. For example, taking away a detainee's laptop or limiting access to DCSD instructors might affect the detainee's IEP progress in such a way as to implicate the IDEA. However, taking away a detainee's laptop and limiting interaction with DCSD employees during a pandemic is also not a clearly unreasonable action in the correctional context given the Sheriff's other goals and concerns. Put another way, the Plaintiffs have failed to show that the denial of special education services was "by reason of the

plaintiff's disability." *Bircoll*, 480 F.3d at 1083. As a result, the Court finds that the Sheriff's actions in light of the known circumstances are not so unreasonable as to constitute intentional discrimination by deliberate indifference. The Plaintiffs' Title II and Section 504 claims fail as a matter of law, their Motion for Summary Judgment on these claims is denied, and the Court grants the Defendant's Motion for Summary Judgment with regards to these claims.

## IV.   Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Summary Judgment as to Liability [Doc. 159] is GRANTED in part and DENIED in part, and the Defendant Sheriff Maddox's Motion for Summary Judgment [Doc. 201] is GRANTED in part and DENIED in part.

SO ORDERED, this 16 day of September, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\19\T.H\MSJTWT.DOCX