# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| T.H., through his next friend T.B.; and T.B.; and J.B., for themselves and those similarly situated,<br><br>   Plaintiffs,<br>v.<br><br>DeKalb County School District et al.,<br><br>   Defendants. | Civil Action No. 1:19-cv-03268-TWT |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

It is hereby stipulated and agreed, by, between, and among Plaintiffs T.H., T.B., and J.B. (collectively "Plaintiffs"), who are acting as the Class Representatives on behalf of themselves and all other Settlement Class Members of the Settlement Classes set forth herein, and the Georgia Department of Education ("DOE") and Richard Woods ("the State Superintendent"), in his official capacity as *State Superintendent*, that the lawsuit captioned above, Civil Action No. 1:19-cv-03268-TWT, in the United States District Court for the Northern District of Georgia, and the matters raised by, or which could have been raised by, this lawsuit against DOE and the State Superintendent are settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and Release herein, and subject to the approval of the Court.

The DOE states that it has begun implementing its substantive obligations set out in this agreement and will further implementation with all due speed.

The Plaintiffs have also brought claims against the DeKalb County School District, Cheryl Watson-Harris in her official capacity as Superintendent of the DeKalb County School Board, and Melody Maddox in her official capacity as Sheriff of DeKalb County. This Settlement Agreement does not address or resolve claims brought against those entities. This Agreement does not include those Parties with regards to releases, covenants, settlement terms, attorney's fees, and all other negotiated terms.

1

**Recitals/Summary of the Litigation**

WHEREAS, T.H. is a 19 year old student with disabilities whose place of residence is within the DeKalb County School District; and

WHEREAS, T.B. is the mother and natural guardian of T.H.; and

WHEREAS, J.B. is a 21 year old student with disabilities whose place of residence is within the DeKalb County School District; and

WHEREAS, both T.H. and J.B. are currently detained, or were at some point in time during the pendency of the Litigation, in the DeKalb County Jail; and

WHEREAS, Plaintiffs allege violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans with Disabilities Act ("ADA"), and the Individuals with Disabilities Education Act ("IDEA"); and

WHEREAS, Plaintiffs allege that the Defendants have failed to implement processes and procedures needed to provide appropriate special education and related services to incarcerated youths who are detained in the DeKalb County Jail;

WHEREAS, the Plaintiffs have also brought claims against the DeKalb County School District, Cheryl Watson-Harris in her official capacity as DeKalb County School District Superintendent, and Melody Maddox in her official capacity as Sheriff of DeKalb County, and this Settlement Agreement does not address or resolve claims brought against those defendants.

**Definitions**

"**Agreement**" or "**Settlement Agreement**" means the Settlement Agreement negotiated between the Parties as defined herein.

"**Class Members**" or "**Settlement Class Members**" means a member of a class or sub-class certified in the Litigation.

"**Court**" means the United States District Court for the Northern District of Georgia, Atlanta Division.

"**Days**" means calendar days, where "business days" or other specification is not stated.

"**Defendants**" means the defendants in the above-captioned action.

"**DeKalb**" means the DeKalb County School District.

"**DOE**" means the Georgia Department of Education.

2

"**FAPE**" means free appropriate public education as defined in 20 U.S.C. § 1401.

"**Final Settlement Date**" means the time in which the Court issues an order approving the executed Settlement Agreement, and any and all related litigation, including underlying due process hearing requests, are also resolved.

"**IDEA**" means the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*

"**IEP**" means Individualized Education Program as defined in 20 U.S.C. § 1401.

"**Jail**" means the DeKalb County Jail.

"**Litigation**" means *T.H., et al. v. DeKalb County School District, et. al*, Case 1:19-cv-03268-TWT filed in the United States Court for the Northern District of Georgia, Atlanta Division.

"**Other Defendants**" means Defendants in the Litigation other than DOE and the State Superintendent.

"**Parties**" means the Plaintiffs, DOE, and the State Superintendent.

"**Provide**" means to inform by means appropriate in any given situation and includes, for example, website posting, in-person communication, email communication and remote communication, such as Zoom meetings.

## AGREEMENT TERMS

**I.   CLASS CERTIFICATION AND APPROVAL**

1) Plaintiffs have obtained certification of the following classes under Fed. R. Civ. P. 23(b)(2):

    A. **IDEA Class:** All youth detained at the DeKalb County Jail with a disability, as defined by the IDEA.

    B. **Discrimination Subclass:** All members of the IDEA Class who are qualified individuals with a disability, as defined by the ADA or Section 504 of the Rehabilitation Act.

2) DOE and the State Superintendent will not oppose Plaintiffs' motion for class certification for purposes of settlement only.

3) If the Court fails to certify the above Settlement Classes for settlement purposes and finally approve the settlement proposed here, this Agreement will be null and void.

4) DOE is responsible to pay the full costs of notice and administration in seeking Court approval of the settlement as stated in this agreement.

5) DOE and the State Superintendent will move jointly with Plaintiffs for preliminary and final approval of this settlement.

## II. SCOPE

1) DOE's duties and obligations referenced throughout this Agreement extend only to members of the IDEA Class and Discrimination Subclass and neither expand nor reduce DOE's IDEA obligation as the SEA, as stated in the IDEA and its implementing regulations, as well as state law.

2) In the event that the IDEA or state law changes, then DOE's obligations under this Agreement will likewise change.

3) Nothing in this Agreement is intended to afford members of the IDEA Class and Discrimination Subclass greater or lesser rights than those otherwise afforded under the law to students with disabilities who are not incarcerated.

4) Nothing in this Agreement is intended to control the manner in which DOE implements the IDEA obligations set forth herein in accordance with state and federal legal requirements.

## III. GUIDANCE RESOURCES PROVIDED BY DOE

1) Within 90 business days of the Final Settlement Date:

   A. DOE will develop and provide implementation guidance to DeKalb on IDEA requirements for the identification of and the provision of FAPE to IDEA Class and Discrimination Subclass members. Such implementation guidance may either be specific to DeKalb or guidance to multiple LEAs, and such guidance may be direct correspondence or via guidance placed on DOE's website.

   B. DOE will instruct that DeKalb refer to the memorandum of understanding provisions recommended by the Office of Special Education Programs, located on the OSEP Ideas That Work Website and entitled MOU JAIBG Bulletin: Model Interagency Agreement (ncjrs.gov), https://www.ncjrs.gov/html/ojjdp/jiabg_blltn_03_1_00/4.html. Such instruction may either be specific to DeKalb or an instruction to multiple LEAs, and such instruction may be direct correspondence or via instructions placed on DOE's website.

   C. DOE will develop and provide guidance to DeKalb to address issues and questions as they arise with respect to the identification of and provision of FAPE to IDEA Class and Discrimination Subclass members.

   D. DOE will develop and provide guidance requiring DeKalb to report on compliance with legal obligations pertaining to the identification of and the provision of FAPE to IDEA Class and Discrimination Subclass members.

4

E. DOE will develop and provide guidance requiring DeKalb to request and secure the prior educational records of IDEA Class and Discrimination Subclass members.

2) During the course of the Settlement Agreement, DOE will provide scheduled training and technical assistance annually (and more frequently as DOE deems necessary) for DeKalb directors of special education (and any others that the directors determine should attend) regarding the identification of and provision of FAPE to IDEA Class and Discrimination Subclass members. This training will consist of a formal session each year at which DOE will address any problems DOE has identified and provide periodic updates regarding pertinent legal and regulatory developments. In addition, DOE will respond to any problems with DeKalb's identification and provision of FAPE regarding the IDEA Class and Discrimination Subclass that DeKalb or the Compliance Reviewer brings to the DOE's attention in writing during the school year.

## IV. MEMORANDUM OF UNDERSTANDING ("MOU")

1) DOE will require that DeKalb provide DOE, no later than June 30th each year, the MOU that DeKalb proposes to be in effect the upcoming school year between DeKalb and the DeKalb County Sheriff, addressing child find, FAPE, and all other legal obligations regarding IDEA Class and Discrimination Subclass members who are incarcerated in the DeKalb County Jail.

2) DOE will notify DeKalb in writing, no later than 30 business days following DOE's receipt of DeKalb's intended MOU for the upcoming school year, whether the MOU meets the requirements of the IDEA, ADA, Section 504, and applicable state law. If necessary, DOE's written notice will specify the changes needed to comply with these requirements.

3) DOE will require DeKalb to provide a revised version of the MOU to DOE making all needed changes identified in DOE's written notice within 20 business days of receipt of the notice.

4) In the event that DeKalb fails to enter a legally adequate MOU with the DeKalb County Sheriff by September 15th each year, the Plaintiffs will report the failure to the Compliance Reviewer. The Compliance Reviewer will report the failure to the State Superintendent. DOE and the State Superintendent will determine the appropriate course of action. DOE is not responsible under this Agreement if DeKalb and the DeKalb County Sheriff fail to enter an adequate MOU.

## V. TRANSFER OF RECORDS

1) DOE will monitor DeKalb's implementation of State Board of Education Rule 160-5-1-.14 governing transfer of student records, as it pertains to the records of each IDEA Class or Discrimination Subclass student, transferred from another LEA to DeKalb, who is incarcerated in the Jail.

## VI. REPORTING TO DOE AND TO THE PUBLIC

1) DOE will require DeKalb to provide tracking reports to DOE each semester regarding (1) the number of youth age 21 and under at the Jail previously identified as IDEA eligible; (2) the number of youth age 21 or under at the Jail suspected of having a qualifying disability under the IDEA and referred for an initial evaluation; (3) the number of youth age 21 or under evaluated or re-evaluated for special education services; (4) the number of youth age 21 and under at the Jail who were provided an IEP meeting and had an IEP developed; (5) the number of youth provided with FAPE; (6) the number of due process complaints, mediation requests, state complaints, and OCR complaints filed by youth at the Jail; and (7) the number of impartial due process hearings involving youth age 21 and under at the Jail.

2) DOE will require DeKalb to post the tracking reports each semester on the "exceptional education" portion of the DeKalb website: https://www.dekalbschoolsga.org/exceptional-education.

## VII. DOE MONITORING OF DEKALB

1) Within 90 business days of the Final Settlement Date, DOE will provide DeKalb with metrics to ensure that DeKalb is complying with IDEA child find and FAPE obligations for IDEA Class and Discrimination Subclass members at the DeKalb County jail.

2) In addition to compliance with its Cross Functional Monitoring Process, DOE will monitor, by way of a random sample of records each semester, (a) DeKalb's exercise of child find related to IDEA Class and Discrimination Subclass members and (b) DeKalb's provision of FAPE for IDEA Class and Discrimination Subclass members.

3) Should DOE determine at any time that DeKalb is not meeting IDEA child find or FAPE obligations as to any IDEA Class or Discrimination Subclass member, DOE will take one or more of the following actions:

   a. Provide DeKalb a remedial plan, including a requirement that DeKalb report to DOE within 30 business days of receipt of the remedial plan, regarding its implementation followed by a report each six weeks thereafter.

   b. Provide DeKalb a written corrective action plan, which would be enacted when DOE has given DeKalb the opportunity to fix an issue or concern, but it has failed to do so, addressing the steps DeKalb must take to fulfill its child find and FAPE responsibilities as to IDEA Class and Discrimination Subclass members.

   c. Provide guidance to DeKalb to allocate an appropriate percent of the IDEA grant funds in its possession to fulfill its child find and FAPE responsibilities to IDEA Class and Discrimination Subclass members.

### VIII. PROVISION OF FUNDING, STAFF, AND RESOURCES

1) Within 90 business days of the Final Settlement Date, DOE will amend its Grant Award Notice language to address DeKalb's funding responsibilities related to child find and FAPE requirements applicable to IDEA Class and Discrimination Subclass members.

2) DOE will provide funding, staff, and other resources necessary to meet its obligations under the Settlement Agreement.

3) The failure to provide adequate funding, staff, or other resources will not limit Plaintiffs' remedies should DOE fail to meet its obligations under the Settlement Agreement.

### IX. COMPLIANCE REVIEW AND ASSESSMENT[1]

1) **Preconditions for Compliance Review and Assessment**

   A. The terms and conditions set forth in this article take effect only when the following conditions are satisfied:

      i. The Court retains continuing jurisdiction over the Litigation to ensure compliance with the terms of the Settlement Agreement;

      ii. The Plaintiffs and the IDEA Class and Discrimination Subclass resolve their claims with respect to the other Defendants either through a settlement enforceable in federal court or through a finding of liability by the Court; and

      iii. The Court approves the Settlement Agreement or enters judgment in favor of Plaintiffs that, if appealed, survives appellate review.

   B. DOE will cooperate in providing access to relevant personnel, services, data, and information necessary for the Compliance Reviewer to perform the Compliance Reviews and Assessments as described herein.

   C. Upon the satisfaction of the Preconditions for Compliance Review and Assessment, the Parties intend to have the Other Defendants participate in the requirements of this article.

2) **Compliance Reviewer**

---

[1] "Compliance Review and Assessment" is synonymous with "Compliance Audit" as that term is used in connection with the DeKalb County School District's settlement with Plaintiffs in this lawsuit. "Compliance Reviewer" is synonymous with "Auditor" as that term is used in connection with the DeKalb County School District's settlement with Plaintiffs in this lawsuit.

7

A. A reviewer will be appointed in accordance with the procedure delineated in this section IX(2) (the "**Compliance Reviewer**") to perform compliance reviews and assessments designed to assess DOE's compliance with this Agreement, which is consistent with DOE's responsibility as the SEA. If the Compliance Reviewer is unable or unwilling to fulfill the Compliance Reviewer's duties under this Agreement, a new Compliance Reviewer will be appointed in accordance with the procedure delineated in this section IX(2).

B. No later than 45 days following the Preconditions for Compliance Review and Assessment being met, the Plaintiffs will initiate the process of good faith negotiations on the selection of a Compliance Reviewer with all Parties by proposing a Compliance Reviewer. To object to Plaintiffs' proposed Compliance Reviewer, a party must respond with a counterproposal no later than 30 days following Plaintiffs' proposal. The Parties anticipate being able to agree on a Compliance Reviewer. If the Parties are unable to agree on a Compliance Reviewer no later than 60 days following the Plaintiffs' proposing a Compliance Reviewer, the Parties will notify the Court and the Court will pick a Compliance Reviewer from among the candidates proposed by the Parties.

C. No party, nor any employee or agent of a party, may have any supervisory authority over the Compliance Reviewer.

D. The Compliance Reviewer may communicate separately with each party.

E. The Parties will be permitted to participate in and have access to all communications between the Court and the Compliance Reviewer. The Compliance Reviewer will agree in writing to be bound by the Protective Order entered by the Court (Dkt. 66), which will remain in effect during the term of this Agreement.

F. The Compliance Reviewer will conduct the Compliance Review and Assessment in a cost-efficient and reasonable manner and in consideration of the educational, fiscal, safety, and operational considerations involved.

3) **Review Plan**

A. No later than 60 days following the Preconditions for Compliance Review and Assessment being met, the Compliance Reviewer will provide the Parties with a written initial review plan which delineates the method the Compliance Reviewer will use to prepare Review Reports (that plan, a "**Review Plan**"). The Compliance Reviewer will consult with the Parties to develop the Review Plan. The Compliance Reviewer may revise the Review Plan in writing after consultation with the Parties. It is anticipated that the Review Plan may use a sampling approach, if appropriate, in an effort to conduct the Compliance Review and Assessment in an efficient and reasonable manner. The Review Plan may include but is not limited to analyses of the following information:

      i. Documents and data collected or aggregated by Defendants' as determined to be valid and reliable by the Compliance Reviewer;

      ii. Interviews or surveys by the Compliance Reviewer of Defendants' relevant staff, current and former IDEA Class and Discrimination Subclass members, the parent/guardian of detained youth or previously detained youth, or others involved in the provision of FAPE to Class Members;

      iii. Information collected by the Compliance Reviewer from site visits.

4) **Access to Information**

The Compliance Reviewer will have access to the data and other information reasonably necessary for him/her to perform a thorough review and assessment of the Parties' actions taken pursuant to this Agreement. DOE and the State Superintendent will cooperate as necessary and within their authority to ensure such access. It will be within the Compliance Reviewer's discretion to share such data and information with Plaintiffs' counsel on an as-needed basis. The Compliance Reviewer will, in writing, inform counsel for DOE and the State Superintendent of each and every intended disclosure to Plaintiffs' counsel. DOE and the State Superintendent will be entitled to impose reasonable confidentiality terms (such as "Attorney Eyes Only") to any such disclosure of data and other information not available to the public or discoverable under the Georgia Open Records Act.

5) **Costs**

    A. The Compliance Reviewer will determine the costs pertaining to his/her review and assessment of DOE based on time spent on the review and assessment of DOE and the Compliance Reviewer's reimbursable expenses related to review and assessment of DOE. Costs for which DOE will be responsible will be only those costs directly attributable to the review of DOE's compliance. Neither the DOE nor State Superintendent will be liable for any costs incurred by the Compliance Reviewer at any time following DOE's and the State Superintendent's satisfying their obligations under this Agreement pursuant to IX(7)(C).

6) **Reports**

    A. Prior to being submitted to the Court, the Parties will have 15 days in which to review each Report and provide comments that will be submitted to the Court with the Report.

    B. The Report as it relates to this Agreement will analyze DOE's compliance with this Agreement and DOE's compliance with IDEA.

    C. The Report will include a summary identifying all materials and information that the Compliance Reviewer relied on in preparing the Report.

D. The Report will not reveal any personally identifying information concerning IDEA Class members, Discrimination Subclass members, or a Class member's parent or guardian.

7) **Frequency and Termination of Compliance Reviews and Assessments**

   A. The Compliance Review and Assessment will be conducted one school semester at a time, with the understanding that DeKalb operates a "fall semester," and "spring semester." The Compliance Reviewer may also assess the provision of extended school year services over the summer, which for purposes of this Agreement will be considered the "ESY summer semester."

   B. The first Report will be conducted for the school semester that is in progress when the first Review Plan is provided to the Parties.

   C. DOE and the State Superintendent will be released from any ongoing responsibilities with respect to Reports upon satisfaction of either of the following conditions:

      i. DOE's full compliance with Sections III through VIII of this Agreement, as determined by the Compliance Reviewer, with the obligations of the Agreement for two consecutive semesters or

      ii. The Court terminates this prospective relief under 18 U.S.C. § 3626(b).

**X.   ATTORNEY'S FEES AND COSTS**

1) The parties shall engage in good faith negotiations with a mediator regarding the amount of any attorney's fees and costs to be paid by the DOE and the State Superintendent to the Plaintiffs with respect to this lawsuit. The parties shall notify the Court if a resolution is reached. The parties otherwise retain all rights with respect to seeking an award of attorney's fees and costs in this action and the Court shall retain jurisdiction to consider any such application.

2) DOE and the State Superintendent will bear their own costs/expenses and attorneys' fees for this lawsuit.

3) Nothing in this Agreement impacts the fee arrangement between the Plaintiffs and their attorneys. Nothing in this Agreement prevents a party from seeking a fee in connection with a future action enforcing the subject matter of this Agreement.

**XI.   RELEASE**

1) The terms of this Settlement Agreement represent the total agreement between the Parties.

2) The releases and covenants stated in this Agreement are contingent on DOE's and the State Superintendent's fulfilling their respective obligations under this Agreement. As consideration for and a material inducement to DOE and the State Superintendent to enter this Agreement, the Settlement Class Members, release, acquit, and discharge DOE and the State Superintendent, including current, past, and future individual administrators, members, agents, employees, attorneys, other agents and representatives, and all other persons acting by, through, at the direction of, under, or in concert with any of them ("**Released Parties**") from any future IDEA administrative or judicial action or other future representative action addressing the systemic delivery of FAPE to IDEA Class and Discrimination Subclass members during the term of the Court's jurisdiction over this Litigation and/or regarding child find and/or FAPE related to any time through and including the date of this Agreement (such claims, the "**Released Claims**").

3) This Agreement does not affect any Settlement Class Member's right to bring a claim for breach of this Agreement and/or bring an action in his or her individual capacity for failure to fulfill IDEA child find and/or FAPE obligations as set forth in IDEA Section 300.149. With the foregoing exceptions, a Settlement Class Member will not bring any suit or action concerning a Released Claim. Similarly, this Agreement does not affect a Settlement Class Member's right to seek compensatory relief in any action for any purpose unrelated to the subject matter of this Agreement.

4) The Parties will cooperate to ensure that releases set forth in the Final Order and Judgment are given their full force and effect and to ensure that the Parties comply with their obligations set forth in this Agreement.

## XII. REPRESENTATIONS AND WARRANTIES.

1) The Parties acknowledge that they each are relying upon the promises, representations, and warranties that the other party makes in this Agreement and that without such promises, representations, and warranties, the Parties would not enter into this Agreement.

2) The Plaintiffs promise that they have not assigned, pledged, or otherwise transferred any part of any claim or cause of action that is the subject of this Agreement and that no other person or entity has any interest in it.

3) The terms of this Agreement will not constitute, be interpreted, construed or used as evidence of any admission of fact, law, responsibility or liability on the part of any of the Released Parties other than responsibility under the terms of this contract.

4) The Plaintiffs represent and warrant that, by virtue of the Settlement Agreement, they have no surviving claim or cause of action against DOE or the State Superintendent with respect to any claims released by this Agreement.

11

5) The Parties acknowledge that they are represented by counsel of their choice, that they have an opportunity to review this Agreement with their counsel, and that they enter this Agreement voluntarily based upon the advice of counsel.

6) DOE, the State Superintendent, and the Plaintiffs respectfully warrant that each has full and complete authority to execute this Agreement and to bind them each individually and collectively to the Agreement's acknowledgements and stipulations contained therein.

7) The text of this Agreement is the product of negotiation among all the Parties and is not to be construed as having been prepared by one Party but will be construed as if all Parties jointly prepared the Agreement, and any uncertainty or ambiguity will not be interpreted against one Party.

## XIII. MISCELLANEOUS

1) **Inadmissibility of the Agreement:** The Parties each warrant and represent that they will not attempt to introduce this Agreement in any legal proceeding, provided however that they may introduce this Agreement into evidence solely for the purposes of enforcing its terms, or in support of any action or claim to implement or enforce the terms of the Agreement.

2) **Entirety of the Agreement:** The Parties agree that this written Agreement constitutes their full and entire agreement and that they have not relied upon any representations, oral or written, outside of this Agreement. The Agreement may be amended only by approval of the Court after consent in writing of the Parties.

3) **Duplicate Copies:** This Agreement may be executed in multiple counterparts, each of which, if fully executed, may be admitted in evidence, consistent with the terms of this Agreement, as a duplicate original.

4) **Confidentiality:** The Parties to this Settlement Agreement will abide by the Family Educational Rights and Privacy Act (20 U.S.C. § 1232g; 34 CFR Part 99) at all times and regarding all aspects of this Settlement Agreement.

[Signature Page Follows]

Defendants Georgia Department of Education and State Superintendent Richard Woods, in his official capacity

Date: 5-27-21

By: /s/ Richard Woods

Richard Woods
State Superintendent of the Georgia Department of Education

Plaintiffs T.H., T.B., and J.B.

Date: 6/1/21

By: /s/ Christina Wilson Remlin

Christina Wilson Remlin
Counsel for Plaintiffs

13