# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| T.H., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DeKalb County School District, et al.,<br><br>    Defendants. | Civil Action No. 1:19-cv-03268-TWT |

**Reply in Support of Plaintiffs' Motion for a Remedial Order**

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Discussion .................................................................................................. 2

    I.  Plaintiffs Are Entitled to the Remedy They Seek .................................. 2

        A.  Plaintiffs have shown they are entitled to an injunction. ................. 2

        B.  The remedy Plaintiffs propose satisfies the PLRA and the Sheriff does not argue otherwise. .............................................................. 5

    II.  A remedial order will help the Sheriff acquire necessary staff, improve Jail safety, and identify additional space. ............................................. 9

Conclusion ............................................................................................... 11

## Introduction

In her opposition to Plaintiffs' motion for a remedial order, the Sheriff does not argue that Plaintiffs' proposed remedy extends beyond what is legally required of her or that Plaintiffs' remedy is overly intrusive or restrictive. Nor does the Sheriff argue that the Class has adequate remedies at law or that her actions result in anything other than irreparable harm. Rather, the Sheriff asserts that after decades of failing to fulfill her federal obligation to provide access to special education and related services at the Jail, she should be given an additional six months to violate the law before the Court even considers awarding relief. This cannot be correct.

The Court should not delay entering Plaintiffs' proposed remedial order and requiring the Sheriff to begin making the systemic changes necessary to comply with the IDEA. Plaintiffs' proposed remedy is necessary, narrowly tailored, and the least intrusive means of providing relief to the Class. Defendant Maddox concedes that much of the injunction Plaintiffs seek is appropriate and should be approved. Doc. 241 (Sheriff's Resp. to Pls.' Motion for a Remedial Order) at 2. As to the remaining portions, she claims that staffing and space shortages prevent her from allowing the District to provide special education and related services and, without any mention of a plan to address these problems, proposes to "maintain the status quo" until June 1,

1

2022. *Id.* at 17. But the status quo—an ongoing deprivation of Plaintiffs' federal statutory rights—continues to cause irreparable harm. A remedial order should thus not be deferred.

## Discussion

### I. Plaintiffs Are Entitled to the Remedy They Seek.

**A. Plaintiffs have shown they are entitled to an injunction.**

Plaintiffs easily satisfy the four-part test for entitlement to injunctive relief. Entry of an injunction is appropriate where a plaintiff shows "(1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

Here, the Sheriff does not contest that Plaintiffs satisfy either of the first two elements—that Class members are being subjected to irreparable injury that cannot be addressed by remedies at law. Nor could she. As we stated in our moving papers, it is well-established that the denial of FAPE constitutes an irreparable injury for which an injunction is appropriate. *See Colón-Vazquez v. Dep't of Educ. of Puerto Rico*, 46 F. Supp. 3d 132, 148–49 (D.P.R. 2014); *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005). The first two factors weigh decidedly in Plaintiffs' favor.

As to the third factor, the balance of the hardships, this Court found that logistical challenges in providing special education and related services do not absolve the Sheriff of liability under the IDEA. Doc. 233 (Op. and Order on SJ) at 16–17. Nevertheless, the Sheriff again raises the specter of logistical challenges, this time acknowledging the Court's liability ruling but arguing that logistical challenges should pardon her from having to comply with the law. Doc. 241 at 1. Not so.

The Sheriff's discussion of logistics boils down to one argument: fulfilling her obligations under the IDEA will be difficult. This, of course, is not a permissible basis on which to deny injunctive relief, as it is well established "[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law." *Deckers Outdoor Corp. v. Ozwear Connection PTY Ltd.*, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014); *e.g.*, *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999) ("Issuance of a permanent injunction in this case does not subject the defendants to a penalty or a hardship since it requires them to do exactly what the act requires, i.e., to comply with the law."); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006) (finding that the "effort, time and expense" required to comply with an injunction is not a hardship, but rather a "consequence" of violating the law).

This is so even where a defendant is required to expend additional resources to comply with the injunction. *Green Tech. Grp., LLC v. United States*, 147 Fed. Cl. 231, 246 (2020) ("[T]he resources needed to conduct a proper procurement are only those that should have been employed originally by the Agency. Having to employ these resources again is not a hardship, but an obligation."); *see also Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 275 (6th Cir. 1994) (finding that limited resources do not relieve defendants of statutory obligations). Indeed, entry of a remedial order could actually *benefit* the Sheriff because an order will require her to develop the resources she needs to comply with the law.[1]

The Sheriff also conspicuously fails to address the **balance** of the hardships. As Plaintiffs have explained, any inconvenience to the Sheriff pales in comparison to the hardship Plaintiffs face in the absence of relief. What was true in 1954 remains true today: "it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Brown v. Bd. of Educ. of Topeka, Kan.*, 347 U.S. 483, 493 (1954). But the continued denial of this opportunity is precisely what Defendant

---

[1] Once again, the Sheriff asserts without proof or explanation that her staffing shortages are "beyond" her control. Doc. 241-1 (Aff. of Sheriff Maddox) ¶ 7. But over the course of this litigation, the Sheriff has never offered any evidence of a plan to hire the staff she needs to comply with her obligations or any efforts to implement such a plan.

Maddox seeks in delaying the entry of an injunction.[2] Aside from the general and well-recognized benefits of education, studies have shown that youth who participate in educational programming in correctional facilities exhibit lower levels of recidivism and have higher chances of securing employment post-release. Doc. 159-24 (Dr. Leone Rep.) at 14–15. To deny Class members these benefits disadvantages them for the rest of their lives.

In addition to satisfying the balance of hardships prong, these benefits also demonstrate that the entry of an order promotes the public interest by lowering the cost of incarceration and recidivism. *See* Doc. 237-1 (Pls.' Br. in Supp. of Remedial Order) at 11-12.

Having established that all four permanent injunction factors weigh in their favor, the Class is entitled to injunctive relief that redresses the Sheriff's violation of their IDEA rights.

### B. The remedy Plaintiffs propose satisfies the PLRA and the Sheriff does not argue otherwise.

Plaintiffs have also shown that their proposed remedial order satisfies the "need-narrowness-intrusiveness" criteria of the PLRA. *See generally Cason v. Seckinger*, 231 F.3d 777, 784 (11th Cir. 2000). The Sheriff does not

---

[2] A delay of even several months works a particular hardship on Plaintiffs because their ages make them near the end of their eligibility to receive special education and related services.

assert otherwise. Instead, as noted above, the Sheriff explicitly consents to several sections of the remedial order. And even where the Sheriff withholds her consent, she does not argue that the proposed remedy extends beyond what the law requires, is too intrusive, or that there is a more narrowly tailored remedy that would result in her complying with the IDEA.

Further, the Sheriff fails to show that the three specific sections she objects to as "hardships" fail to meet the requirements of the PLRA. Doc. 241 at 13-15. First, the Sheriff opposes Section 2(c)(2) of the proposed remedial order, which requires the Sheriff to provide the School District with weekly reports of all inmates released from the Jail aged 21 and younger. Doc. 241 at 14. This section of the proposed order is necessary because the School District must be told the identity of students who leave the Jail so that the School District can appropriately transfer them to a new educational setting. The School District must be updated, for example, as to whether the child has been temporarily transferred and will return shortly or has been released or moved to a post-adjudication detention facility. It is not enough to remove the youth's name from the weekly report the Sheriff sends to the School District. Doc. 241 at 14.

Even more, the Sheriff's objection that providing the identity of exiting Class members would be difficult implies that it would be possible to provide special education and related services at the Jail in compliance with the

6

IDEA without her staff knowing who Class members are. That cannot be. If Class members are to receive special education and related services, Jail staff will have to know who they are and know their education schedules. It is therefore not overly intrusive for the Sheriff to provide this information as a separate list to the School District with the weekly reports she is already sending.

Second, the Sheriff objects to implementing formal, written policies to govern the provision of special education and related services at the Jail because, as she states, the Jail is currently understaffed, lacking in space, and over budget. Doc. 241 at 17. As Plaintiffs stated in their opening brief, this requirement is necessary to remedy the Sheriff's ongoing violations of the IDEA and is narrowly tailored and minimally intrusive because it requires the Sheriff to comply with the law while giving her discretion to determine how that will be accomplished—a conclusion that the Sheriff does not dispute. Doc. 237-1 at 17-18, 23. The existence of logistical challenges at the jail make policies that protect the IDEA rights of Class members even more crucial. In the absence of clear policy, those rights will continue to be ignored.

Finally, the Sheriff objects to the appointment of a monitor because she does not want to pay for one. Doc. 241 at 16. But while Plaintiffs do not

7

contend that a monitor would be needed in every case,[3] in this case a monitor is necessary. Here, the Sheriff has avowed that she lacks capacity to meet her IDEA obligations and that she has no intention of even beginning to try to meet them in the near term. Additionally, implementation of the remedial order will require the cooperation of multiple government agencies and will require time. A monitor with subject matter expertise to help assess performance is thus essential.

In the absence of a neutral monitor with the authority to assess the situation at the Jail, monitoring compliance with the remedial order will fall to Plaintiffs' counsel. The Sheriff's compliance with the remedial order will not be ascertainable on the basis of the Sheriff's self-reporting. And the resulting adversarial process will undoubtedly be more expensive and intrusive than a neutral monitor. The monitor with limited responsibility and authority outlined in the proposed remedial order is therefore the least intrusive method for remedying the violation of IDEA Class members' federal rights.

---

[3] *See* Doc. 237-1 at 25. *Cf.* Doc. 241 at 16.

## II. A remedial order will help the Sheriff acquire necessary staff, improve Jail safety, and identify additional space.

The Sheriff evokes dire visions of violence at the Jail in an effort to avoid making any long-term plans regarding the provision of special education and related services until next summer. Doc. 241 (Sheriff's Resp. to Pls.' Motion for a Remedial Order) at 2, 8. But one does not follow the other. The Sheriff is required to operate the Jail in accordance with all of her legal obligations, including the obligation to keep Class members safe **and** provide for the access needed to deliver special education and related services to them. The failure to comply with one legal obligation (to staff the Jail appropriately) does not give her an excuse for delaying compliance with another legal obligation (to provide access to special education and related services).

Even more, the Sheriff's allegations of staffing shortages and other logistical challenges weigh in favor of entering a remedial order. The Sheriff says, for example, that if she is required to provide six detention officers to provide security to Class members, she would be unable to ensure the safety of staff and detainees elsewhere in the Jail. Doc. 241 at 10. If that is true, a

9

remedial order is even more urgent so that the Sheriff will be required to develop a plan to hire and onboard the officers she needs.[4]

The Sheriff also raises concerns about mixing "keep separates," different genders, different gang members, and inmates with different classifications. As an initial matter, nothing in the proposed remedial order specifies the manner in which the Sheriff must organize students for instruction. Further, as detailed in the uncontested expert report of Dr. Leone, delivering educational programming inside of jails and prisons decreases the number of disciplinary infractions, breaks down barriers amongst detainees, improves relations between staff and detainees, and improves morale amongst officers and inmates:

> There is a substantial reduction in violence and disciplinary infractions among those involved in prison education. . . . Prison education also breaks down racial and ethnic barriers that are

---

[4] The Sheriff incorrectly attempts to distinguish the *Garcia* case by arguing that the L.A. County Sheriff's Department has more staff than she does. Doc. 241 at 4. But the number of budgeted positions she quotes refers to the positions available to police the 2.9 million people in that Sheriff's jurisdiction. LASD, *2019 Crime and Arrest Statistics* at 4, 12, https://lasd.org/pdf/Transparency_2019_CAAS_FINAL.pdf. It is not the number of staff at the L.A. County Jail. Further, the Los Angeles County Jail is one of the largest county jails in the country and has on average more than ten times the number of detainees as the DeKalb County Jail so it is to be expected that it would have more staff. *Compare* LASD, Custody Services Division, *2021 Quarter One Report* at 4, https://lasd.org/wp-content/uploads/2021/08/Transparency_Custody_Services_Division_Stats_Quarter_1_2021.pdf (showing an average daily inmate population of 15,325 in March) *with* Doc. 241 at 8 n.2 (stating the DeKalb Jail population ranges from 1450 to 1500).

often a cause of tension and violence in prisons, significantly improves relations between staff members and the incarcerated, and dramatically enhances the prisoners' self-esteem. The Prison Studies Project at Harvard also reported a decline in disciplinary infractions among students participating in education programs and an improvement in general prison conduct. Education programs in correctional facilities have the potential to not only transform the experiences of individuals enrolled, but it also transform the culture within the correctional facilities. Doc. 132-5 (Dr. Leone Rep.) at 16 (internal quotations omitted).

Finally, the Sheriff raises concerns about space within the Jail although the Jail is currently occupying less than half of the inmates it is designed to serve, Doc. 241-1 (Aff. of Sheriff Maddox) ¶ 9, and already has three dedicated classrooms for the delivery of educational services. Doc. 241 at 12. The Sheriff must be required to develop and implement a plan that addresses logistical challenges and ensures she complies with the law.

## Conclusion

At bottom, the Sheriff argues that given the conditions at the Jail, the Court should wait until next summer before even considering whether to enter a remedial order. And even after that delay, the Sheriff says, she may still not be ready to comply with her legal obligations because she is "unable to predict exactly when . . . conditions will improve." Doc 241 at 3.

Meanwhile, under the IDEA and this Court's Order on Summary Judgment, our clients have the right to special education and related services. For years their rights have been ignored (long before the Pandemic),

11

and they are currently languishing instead of learning inside the Jail, receiving wholly inadequate worksheets slid under their cell doors, instead of the individualized education to which they are entitled.

This right has been denied for long enough. Plaintiffs thus respectfully request that the Court enter the Proposed Remedial Order so that the Sheriff will begin the process of coming into compliance now.

DATED: December 6, 2021

/s/ Aaron Finch
**Christina Wilson Remlin**
Georgia Bar No. 615630
**Aaron Finch**
*admitted pro hac vice*
N.Y. Bar No. 5140033
**Lindsey Frye**
*admitted pro hac vice*
N.C. Bar No. 47752
**Joshua Arocho**
*admitted pro hac vice*
N.Y. Bar No. 5685599
CHILDREN'S RIGHTS, INC.
1700 Northside Drive, Suite A7
PMB 1086
Atlanta, GA 30318
Phone: (646) 831-3543
Facsimile: (212) 683-4015
cremlin@childrensrights.org
afinch@childrensrights.org
lfrye@childrensrights.org
jarocho@chilrensrights.org

**David G.H. Brackett**
Georgia Bar No. 068353

12

**Amanda Kay Seals**
Georgia Bar No. 502720
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, Suite 3900
Atlanta, Georgia 30309
Phone: (404) 881-4100
Facsimile: (404) 881-4111
brackett@bmelaw.com
seals@bmelaw.com

**Randee Waldman**
Georgia Bar No. 100107
BARTON JUVENILE DEFENDER CLINIC
EMORY UNIVERSITY SCHOOL OF LAW
1301 Clifton Road
Atlanta, GA 30322
Phone: (404) 727-6235
Facsimile: (404) 727-7851
rwaldm2@emory.edu

**Greg Hecht**
Georgia Bar No. 003860
**Michael W. Warner**
Georgia Bar No. 751362
HECHT WALKER JORDAN, P.C.
3340 Peachtree Road, Suite 1530
Atlanta, GA 30326
Phone: (404) 348-4881
Facsimile: (678) 884-1257
greg@hmhwlaw.com
michael@hmhwlaw.com

*Attorneys for Plaintiffs*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Memorandum has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Memorandum has been prepared using 13-pt Century Schoolbook Font.

<u>/s/ Aaron Finch</u>
Aaron Finch

## **CERTIFICATE OF SERVICE**

I hereby certify that on **December 6, 2021,** I electronically filed in the above styled action the foregoing **Reply in Support of Plaintiffs' Motion for a Remedial Order** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification to all counsel of record.

/s/ Aaron Finch
Aaron Finch
